### In re CHANEY.
#### No. 1514.

District Court, W. D. Virginia,
at Harrisonburg.
July 16, 1941.

---

[3] Hazleton v. Le Duc, 10 App.D.C. 379; Bruffy v. Baker, 69 App.D.C. 266, 100 F.2d 439; Brown v. Lee, 5 Cir., 192 F. 817.

Joseph I. Nachman, of Staunton, Va., for debtor.

J. M. Perry and L. W. H. Peyton, both of Staunton, Va., for Holly Stover, a creditor.

PAUL, District Judge.

This matter involves the question of whether the debtor, who has filed a petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, is a farmer within the meaning of that act.

It appears that in 1936 the debtor had title to and was living on a tract of approximately 130 acres of land in Augusta County, against which there was a large indebtedness secured by liens on the property. The debtor having failed to pay interest on the debts or taxes on the property for sometime and being greatly in default as to her obligations, a creditor's suit was brought in the Circuit Court of Augusta County against her which resulted in a decree under which the property was sold at public auction and purchased by one Holly Stover. This purchaser paid the purchase price for the property and this was applied to paying off the debts against the property, and Stover took possession of the property under his purchase. However, some irregularity in the proceedings in the state court occurred which caused the Supreme Court of Virginia to hold that the sale was void and, in October 1936, the case was remanded to the Circuit Court of Augusta County for further proceedings and Mary V. Chaney was again placed in possession of

the property. In the course of these further proceedings some action was taken, from which the debtor applied for another appeal to the Supreme Court of Virginia, but that appeal was not granted; and in February, 1940, the state court entered a decree subrogating Holly Stover to the liens upon the land which had been paid off by his funds and directing that unless the amount so charged against the land should be paid within a limited time the land should again be offered for sale at public auction.

The indebtedness was not paid and in July, 1940, a few days before a sale was to be had, the debtor filed her petition in this court under Section 75 of the Bankruptcy Act. The petition was referred to a conciliation commissioner and Holly Stover filed his petition in the proceedings asking leave to proceed with the sale of the property, contending in substance that the relation of debtor-creditor did not exist as between the debtor and himself and that the petition under Section 75 should not operate as a stay as to the proceedings in the state court. This court overruled this contention and sent the matter back to the conciliation commissioner. The conciliation commissioner thereafter reported that no agreement for composition or extension had been agreed upon between the debtor and her creditors and, by an order of December 18, 1940, the debtor was granted leave to tender her petition under Subsection s of Section 75, 11 U.S.C.A. § 203, sub. s, if she should be so advised. Such an amended petition was filed and thereupon Stover filed his objections to further proceedings on said amended petition on the ground that the debtor was not at the time of filing her petition a farmer within the definition and meaning of the statute and was not entitled to the relief provided by Subsection s of Section 75 of the Bankruptcy Act. The court thereupon, by an order of January 3, 1941, referred the matter to the conciliation commissioner for a hearing and report upon the question of whether or not the debtor at the time of filing her petition and her amended petition was a farmer within the meaning of the statute.

In the hearings before the conciliation commissioner on the reference to him, a number of witnesses were heard and it was stipulated by the parties that there should also be considered in evidence certain parts of the record of the proceedings in the state court. As a result of the reference, the conciliation commissioner, on May 30th, filed his report finding that the debtor was not a farmer within the meaning and definition of the statute at the time she filed her petition. The debtor duly filed her exceptions to the report of the conciliation commissioner, alleging that the findings were in error, and it is upon these exceptions that the matter is now before this court.

While no exception has been taken by the debtor based on any contention as to the time in which the objections of the creditor were first raised, I think it proper to say that inasmuch as the question raised goes to the jurisdiction of the court it could be raised and should be considered at any stage of the proceedings; and it is to be noted that the question was raised at the first opportunity after the debtor sought the benefits of Subsection s.

The evidence which was submitted to the conciliation commissioner and which is now before the court on the question of whether or not this debtor is a farmer within the meaning of the act is confusing and unsatisfactory and is lacking in the definiteness and clarity which is desirable. This is primarily due to the contradictions and evasiveness of the debtor in her testimony and to her lack of frankness and her unwillingness to make any true disclosure of her affairs. As far as can be gathered from the evidence, however, the situation appears to be substantially as follows:

There is on the tract of land which the debtor owns a cave, and for several years prior to 1937 the debtor had exploited this cave as a commercial proposition, charging admissions thereto. During part of the time she leased the cave to some one else and for a short period prior to August, 1937, when she was dispossessed of the property, she operated the cave herself. She testifies that her net income from the cave was about $125 per month. It appears, however, that at the same time she was cultivating some part of the land, apparently 12 to 20 acres, and that she was the owner of some livestock and some farming implements. The evidence of this latter fact is that in February, 1937, during the pendency of the creditor's suit, the debtor, for a consideration of $100, sold and transferred to Richard A. Cates, her son by a previous marriage, all livestock of every nature and description and all the farming implements on the place. The

stock and farming implements are not specifically described, but the bill of sale simply refers to *all* livestock and *all* farming implements. If this was a bona fide sale at a fair price, the livestock and farming implements must have been meagre and insufficient to maintain any real farming or dairying operations. Just what the nature of the farming operations carried on on the property at that time were is not disclosed except, as stated, it would appear that some land was cultivated. This was the situation in the fall of 1937, just prior to the time when Stover came into possession of the land by his purchase at the judicial sale.

The debtor was reinvested with possession of the property in August, 1939, and apparently some small grain was sown on the property that fall, for during the year 1940 there was threshed 41 bushels of wheat, 126 bushels of rye and 30 bushels of barley. It is not known whether this grain was put out on shares by some one in the neighborhood or grown entirely by the debtor. As near as I can make out from the evidence, there was also a field of about 5.2 acres of land on which corn was grown during the year 1940. It would also appear that this same field of 5.2 acres was sown in wheat in the fall of 1940, this being done by a man named Cash, who lived in the neighborhood and who undertook to raise the wheat crop for a one-third share, using all of his own farming implements except a disc belonging to the debtor.

It appears that on this tract of land there are some 30 acres of rough land on a ridge which is not tillable, and there are about 40 acres or more in pasture, part of which is rough. It is stated also that 20 or 22 acres of land are devoted to the raising of corn and small grains. The debtor testifies that she now has on the place 3 horses, 6 or 8 cows and a few other animals, the nature of which she does not disclose. She says that she has also wagons, harrows, plows, a hay rack, mowing machine, corn planter, drill and a few other implements which would seem to be sufficient to conduct the farming operations which she claims to conduct. However, in her petition the debtor states that she owns no personal property of this nature or of any sort and testifies that all of the stock, farming implements and equipment belong to her son.

The debtor testifies also that since she returned to the property in 1939 no grain of any sort has been sold from the place and that she has fed it and is feeding it all to the livestock on the place, which livestock she admits belongs to her son. She testifies also that no hay has been sold off of the place and that this also has been fed to the stock. In contradiction of this, she testifies at another place that the reason she has not sold any grain was because she was not compelled to sell and she was holding it for a higher price. When asked as to her income from the farm, the debtor states at one point that she raises and sells chickens and turkeys and geese and produces grain and milk which she sells and also that she sells vegetables from the place and produces and sells hogs, but while testifying at another time she states that she had no income whatever from the farm except what she may derive from the sale of the wheat and the rye that she had harvested and from the corn crop. When pressed as to her income from her farming operations, the debtor was accustomed to take refuge in the statement that she kept no records and could not say what her income was. When questioned as to whether or not she did receive an income from her present husband, who is not now living with her, or from her sons, of which she has several, she was evasive and attempted to leave the impression that she received very little if anything from these sources, with the result of creating the impression that some such source of income is her means of livelihood.

In spite of the fact that the debtor refers to the grain and hay which she has on the place and which she at one time states she is holding for a higher price and at another time states she is feeding to the stock on the place, no grain of any sort or any other personal property is scheduled as an asset in her petition. When pressed as to the relationship between herself and her son in the operation of the farm, the debtor admitted that all of the machinery and livestock belonged to the son; and was asked the following specific questions, to which she gave the following answers:

"Q. Is your son operating the farm? A. He is operating the farm or he is financing the farm.

"Q. What does he pay you to assist him? A. He is paying me quite a large price.

"Q. How much? A. I could not answer that."

All that can be made out of this mass of evasive and contradictory testimony is that the debtor owns and resides upon this tract of approximately 130 acres of land; there is upon the land a small amount of livestock and some farming implements which she admits are owned by her son; that one of her sons, apparently not the same one who owns the livestock, etc., lives with her; that some 20 or 22 acres of the land are cropped either through the activities of the debtor and her son or by share croppers and that there is raised on this land that amount of small grain and corn ordinarily produced by such acreage. Just who is operating in the sense of proprietorship the limited farming operations being conducted it is impossible to tell. It may be conceded that a person could operate a farm within the meaning of the act through using livestock and implements leased or loaned by another person, and one might assume that this was the situation here except for the debtor's own testimony at one point that the farm is being operated or financed by her son and that she is being paid to assist him. Of course, the debtor could, had she so chosen, have made the situation clear. She could have told of any arrangement or agreement with her son as to the activities carried on and as to the use of the livestock and farming implements. She could have told with at least reasonable accuracy and detail the income which she received from the place, if any, and from other sources, if any, but this she consistently failed to do.

Counsel for the debtor emphasizes the testimony of one E. R. Shanklin, who states that he is a field supervisor of the soil conservation check-up for the United States Department of Agriculture and who testifies that in his records Mrs. Chaney is listed as operating a commercial farm. He gives the definition of a commercial farm as one on which 100 bushels of wheat or more are sold upon the market. It develops without dispute, however, that during the year in which this petition was filed there were only 41 bushels of wheat raised on this place, and it further developed that this government agent was classifying this farm on the basis of its production some eight or ten years ago. Not only is the testimony of this witness of little value in this respect, but it appears also that he had no knowledge and gave no testimony as to the actual proprietorship of the operations on the place other than to say that whenever he went to the property he saw Mrs. Chaney and obtained such information as he sought from her.

While the conciliation commissioner was unable to form a conclusion as to the exact status of affairs on this place, he was of opinion that the debtor was not a bona fide farmer within the meaning of the statute and that the primary source of her income was not derived from any farming operations. I think the evidence bears out this view, or rather it should be said that the evidence fails to show that the debtor is bona fide personally engaged in farming or that the principal part of her income is derived from such operations, and it was incumbent upon the debtor to show this.

The statute provides that the term "farmer" includes a person who is primarily bona fide personally engaged in producing products of the soil or in dairy farming or producing poultry or livestock or the principal part of whose income is derived from any of such operations. The question of whether a person comes within the definition of the act has arisen in many of these proceedings throughout the country, but the decided cases are of little value in determining the question here because each case must depend upon its own facts. It seems certain, however, that the use of the word *primarily* engaged means that the alleged farming operation must be the primary activity of the debtor and not a mere sideline to some other more important, lucrative and time-engaging occupation, and that when reference is made to the *principal part* of the debtor's income it is meant that one whose real means of livelihood is derived from some other source cannot obtain the protection of this act merely by dabbling in agricultural pursuits even though some income be derived therefrom.

It must be remembered that the burden rested upon the petitioner here to show that she came within the purview of the act—that her petition was one of which this court had jurisdiction under the provisions of Section 75. It is now well settled that any one who invokes the jurisdiction of the Federal Court must allege and be prepared to prove the facts necessary to that jurisdiction and that when

the jurisdiction is challenged the burden of proof is upon him who has invoked the jurisdiction to prove his right to be there. The leading case on this question is McNutt v. General Motors, etc., Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135, where it is held that one who sues in the United States Court must plead the essential jurisdictional facts and must carry throughout the litigation the burden of showing that he is properly in court; if his allegations of jurisdictional facts are challenged in any appropriate manner, he must support them by competent proof. And even where they are not so challenged, the court may insist that the jurisdictional facts be established by a preponderance of the evidence or the case be dismissed.

In the instant proceeding the petitioner has failed to sustain this burden. She has not shown that she is primarily bona fide personally engaged in the activities which constitute a farmer under the definition of the act nor has she shown that the principal part of her income is derived from such activities. Because it does not appear that this court has jurisdiction, the proceeding will have to be dismissed.