**SCROGGIN FARMS CORPORATION v. McFADDEN et al.**

**No. 13506.**

Circuit Court of Appeals, Eighth Circuit.

Jan. 7, 1948.

U. A. Gentry, of Little Rock, Ark. (Leffel Gentry and Martin Fulk, both of Little Rock, Ark., on the brief), for appellant.

G. D. Walker, Asst. U. S. Atty., of Helena, Ark. (Peyton Ford, Asst. Atty. Gen., Edward H. Hickey, Sp. Asst. to Atty. Gen., Richard N. Ivins, Attorney, Department of Justice, of Washington, D. C., James T. Gooch, U. S. Atty., and Warren E. Wood, Asst. U. S. Atty., both of Little Rock, Ark., and James A. Doyle, Associate Solicitor, Lewis A. Sigler, Asst. Associate Solicitor, and Katherine A. Markwell, Attorney, Department of Agriculture, all of Washington, D. C., on the brief), for appellee Commodity Credit Corporation.

E. L. McHaney, Jr., of Little Rock, Ark. (A. F. House, Rose Dobyns, Meek & House and Owens, Ehrman & McHaney, all of Little Rock, Ark., on the brief), for appellees John H. McFadden, Jr., and others.

Before SANBORN, WOODROUGH, and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was for the recovery of possession of certain cotton warehouse receipts or for damages for their alleged conversion. The receipts were pledged by cotton producers as collateral to secure loans made available by the Commodity Credit Corporation, an agency of the United States, in accordance with the provisions of the Agricultural Adjustment Act of 1938, 7 U.S.C.A. § 1281 et seq. The producer-borrowers sold their equities of redemption to the appellant and subsequently sold them a second time to the appellee McFadden. McFadden, the second purchaser, redeemed and took over the warehouse receipts from the appellee Commodity Credit Corporation, and appellant brought this action to recover against Commodity, McFadden and some 62 producer-borrowers (all named as defendants) the value of the equities of redemption. By agreement the case against McFadden and Commodity was tried to the court separately and the trial as to the producer-borrowers who had twice sold their equities of redemption was deferred. Judgment was entered dismissing appellant's case with costs as to McFadden and Commodity in accordance with the court's findings of fact and conclusions of law and this appeal is taken to reverse the judgment. Only McFadden and Commodity are joined as appellees.

*Statement.*

We consider first the appeal as to the Commodity Credit Corporation. It appears in respect to that corporation: That it is an agency of the United States, 15 U.S.C.A. § 713, incorporated under the laws of Delaware pursuant to Executive Order Oct. 16, 1933, No. 6340, and that the appellant Scroggin Farms Corporation is an

Arkansas corporation engaged in the farming and cotton business.

Section 302 of the Agricultural Adjustment Act of 1938, 52 Stat. 43, 7 U.S.C.A. § 1302, directs the Commodity Credit Corporation to make available to cotton producers loans on their cotton when the average market price of a specified grade of cotton falls below 52% of the parity price. The loans must be rated not less than 52% or more than 75% of the parity price. The amount, terms and conditions of the loans must be fixed by the Secretary of Agriculture, subject to approval of the Commodity Credit Corporation and the President. The loans are without recourse against the producers in the event a deficiency results from a sale of the collateral securing the loans, but the producers are entitled to any excess that may remain from a sale of the collateral after liquidating the loan and paying incidental charges. Loans made under this section of the Act are part of a Government program designed to assist farmers in obtaining, insofar as practicable, parity prices for their cotton, Agricultural Adjustment Act of 1938, Section 2, 52 Stat.

31, 7 U.S.C.A. § 1282. The pertinent divisions of the Act are set forth in the footnote.[1]

The price of cotton was below 52 per cent of parity in 1938, and a loan program for the 1938 cotton crop was duly approved. Cotton producers in Arkansas stored their cotton in authorized warehouses and were issued negotiable warehouse receipts. Using these warehouse receipts as collateral, they borrowed from various lending agencies throughout the State the full amount of the loan value of their cotton, which was higher than the current market price of the cotton. Each loan was evidenced by a note and a loan agreement prepared on forms furnished by the Commodity Credit Corporation. Each note and loan agreement recited that the loan was secured by a pledge of specified negotiable warehouse receipts, and the receipts were endorsed to the payee of the note or to bearer. In due course of its business, the Commodity Credit Corporation became the owner of the notes and the collateral security.

All notes for loans on the 1938 cotton crop were originally due on or before July

---

[1] Agricultural Adjustment Act of 1938, 52 Stat. 31, 7 U.S.C.A. § 1281 et seq.

"Sec. 2. It is hereby declared to be the policy of Congress * * * to regulate interstate and foreign commerce in cotton * * * to the extent necessary to provide an orderly, adequate, and balanced flow of such commodities in interstate and foreign commerce through * * * loans, * * * assisting farmers to obtain, insofar as practicable, parity prices for such commodities and parity of income, * * *."

"Sec. 302 (a) The Commodity Credit Corporation is authorized, upon recommendation of the Secretary and with the approval of the President, to make available loans on agricultural commodities (including dairy products). Except as otherwise provided in this section, the amount, terms, and conditions of such loans shall be fixed by the Secretary, subject to the approval of the Corporation and the President. * * *

"(c) The Corporation is directed to make available to cooperators loans upon cotton during any marketing year beginning in a calendar year in which the average price on August 1 * * * of seven-eighths Middling spot cotton on the ten markets designated by the Secretary is below 52 per centum of the

parity price of cotton, * * * or the August crop estimate for cotton is in excess of a normal year's domestic consumption and exports, at rates not less than 52 per centum and not more than 75 per centum of the parity price of cotton as of the beginning of the marketing year. In case marketing quotas for cotton are in effect in any marketing year, the Corporation is directed to make available, during such marketing year, to noncooperators, loans upon cotton at 60 per centum of the rate applicable to cooperators. A loan on cotton to a noncooperator shall be made only on so much of his cotton as would be subject to penalty if marketed. * * *

"(f) For the purposes of subsections (b), (c), and (d), a cooperator shall be a producer on whose farm the acreage planted to the commodity for the crop with respect to which the loan is made does not exceed the farm acreage allotment for the commodity under this subchapter, * * *

"(h) No producer shall be personally liable for any deficiency arising from the sale of the collateral securing any loan under this section unless such loan was obtained through fraudulent representations by the producer."

1, 1939. By public press release, the Commodity Credit Corporation extended the maturity dates first to July 31, 1940, and then to July 31, 1941. The last extension was made on April 3, 1940, and Commodity included in the announcement of the extension a notice that after July 31, 1940, which was the maturity date under the first extension, it would honor no assignments of producers' equities of redemption in the pledged warehouse receipts unless the assignments were executed on forms prepared by Commodity, known as "Form R," and unless they were presented to Commodity within 15 days after they were executed by the producers. The purpose of the notice was to stop speculation in producers' equities of redemption.

Subsequently, Commodity sent to each producer-borrower a statement showing the number of unredeemed warehouse receipts in its possession on July 31, 1940, and the amount of money required to pay the note and redeem the receipts. The notice stated that the information was furnished the producer-borrower in order to give him a current record of his account.

On July 25, 1941, the appellant presented to Commodity assignments from various producers covering the equity of redemption in some 2,478 warehouse receipts, each of which represented one bale of cotton, tendered payment of all sums due on the notes involved, and demanded delivery of the warehouse receipts. The tender and demand were refused on the ground that the assignments were not made on Form R, and were presented to Commodity after July 31, 1940.

On December 10, 1942, the appellant brought an action against the Commodity Credit Corporation (which is not the action involved in this appeal) in the Chancery Court of Pulaski County, Arkansas. The appellant claimed to be the owner of the equity of redemption in the identified 2,-478 warehouse receipts (described as 2,146 in the complaint) and sought an order of the court compelling Commodity to deliver to the appellant all such warehouse receipts then in its possession and to pay the appellant the value of any receipts that had been in its possession on the date of the

appellant's tender and demand but had subsequently been released to third persons. The action was removed to the United States District Court for the Eastern District of Arkansas, Western Division, and identified as No. 714. The court found that 286 of the 2,478 warehouse receipts involved in the action had been in Commodity's possession on July 25, 1941, the date of the appellant's demand, and had subsequently been released to third persons. The court found that the appellant's assignments with respect to those 286 receipts were valid and that Commodity's rejection of appellant's attempt to redeem them amounted to a conversion. The appellant was awarded $6,270.09 damages for the conversion of that quantity of cotton. The appellant was awarded no damages for the refusal of Commodity to deliver the remainder of the receipts, most of which had been redeemed from Commodity by the producer-borrowers or by second assignees of the producer-borrowers prior to the appellant's presentation of its assignments. The judgment in No. 714 has been satisfied.

The present action was brought on December 13, 1945, by the appellant to recover damages for the alleged conversion of those warehouse receipts involved in No. 714 which the appellee McFadden had redeemed from Commodity prior to the appellant's tender and demand on July 25, 1941. McFadden was a second purchaser of most, but not all, of the equities of redemption involved. Most of them had been sold by the defendant-producers to the appellant before they were sold again to McFadden and appellant charged that Commodity knew or should have known that fact and was guilty of fraud in permitting McFadden to redeem the certificates, but the trial court found that Commodity had no knowledge of the prior sales at the time the receipts were redeemed. The action was initiated in the Chancery Court of Pulaski County, Arkansas, was removed to the United States District Court for the Eastern District of Arkansas, Western Division, by the appellee Commodity Credit Corporation, and the complaint against both Commodity and McFadden was dismissed by that court.

*Opinion as to Commodity Credit Cor- poration*

 *The Jurisdiction.* Commodity was brought into the action as a defendant in the state court by supplemental complaint and it alone removed the case to the federal court. In that court no motion to remand was made, the jurisdiction of the court was agreed to, and the issues were fully tried out and determined as to the parties before us. But on the appeal appellant has suggested that the jurisdiction of the federal court should be determined. It has not argued against the jurisdiction in its brief, stating merely that "the question is not free from doubt", but it is recognized that the jurisdiction of a federal court in any case must appear affirmatively and cannot be conferred by consent, and the question of its existence must be noticed by the court at any stage of the case. Accordingly the brief of Commodity covers very fully the question of jurisdiction as it is presented here. The doubt arises from the fact that there were irregularities in the removal proceedings. The other parties defendant were not joined with the nonresident defendant Commodity in the petition for removal and there was no specific allegation that the controversy with Commodity was separable. But it is made clear that the complaint of the Arkansas plaintiff in this case, together with the amendment thereto, charged against the defendant Commodity Credit Corporation, an agency of the United States, 15 U.S.C.A. § 713, incorporated under the laws of Delaware pursuant to Executive Order 6340, a separate and distinct cause of action for more than Three Thousand Dollars on which a separate and distinct suit might properly have been brought and complete relief afforded without the presence of other parties. That action could have been brought in the federal court in the first instance.

The complaint with the amendment also presented a civil suit arising under the constitution and laws of the United States over which the District court had original jurisdiction and it was removable on that ground. It was alleged that the warehouse receipts involved were pledged to secure the repayment of loans made available by Commodity pursuant to the provisions of the Agricultural Adjustment Act of 1938; that appellant purchased assignments of the rights to redeem the receipts; that Commodity purported by its action to invalidate appellant's assignments and permitted a second purchaser of the redemptive rights to redeem the receipts. Commodity purported to act in accordance with the provisions of the Act and the allegation of the amended complaint that its action was a vain attempt "to modify the pledge agreements by its own unilateral action" presented a controversy (which was an essential element of the cause of action) over the construction of the Act, the Act being a law regulating commerce. The action could have been brought in the District court on that ground. 28 U.S.C.A. § 41(8). Hence the case in this court, like Mackay v. Uinta Co., 229 U.S. 173, 176, 33 S.Ct. 638, 639, 57 L.Ed. 138 "resolves itself into an inquiry as to whether, if irregularly removed, it could be lawfully tried and determined." We hold, as was held in that case, that as the case was in fact removed, the irregularities of the removal proceedings were waived by the appearance and litigation of the parties in the federal court without motion for remand, and that because the case was one in which all the jurisdictional elements were present to enable the federal court to take cognizance of it, the federal jurisdiction became vested. The acquisition of jurisdiction included the entire suit as all defendants were properly joined in the suit as defendants and the plaintiff's right to relief against all of them arose out of the same transactions and presents questions of law and fact common to all.

Commodity defended the action against it, (1) on the merits, claiming that at the time it permitted McFadden to redeem the warehouse receipts pledged to it as security for loans to producer-borrowers McFadden presented duly executed Form R assignments from the producer-borrowers to himself which showed him to be the owner and entitled to make redemption of the certificates, and Commodity had no knowledge or reason to believe that the producer-borrowers had previously assigned their right of redemption to any other person. (2) It also asserted the defense of res judicata,

claiming that the judgment of the court in the first action brought by appellant against Commodity referred to as No. 714, was a final adjudication of Commodity's non liability for conversion of the 563 warehouse receipts involved herein. (3) It also pleaded the Arkansas three-year statute of limitations as a bar to the present action.

The trial court found as a fact that at the time Commodity permitted McFadden to make redemption it did not know the same cotton had been previously sold by the producers and it sustained each of the defenses asserted by Commodity.

*The Merits*

██ Appellant in its brief concedes abstractly and we think correctly, that "if the pledgee (Commodity) should have released the pledged property to the assignee of the pledgor without any knowledge that the pledgor had previously sold the property, there would be no liability on the part of Commodity", and examination of the evidence shows that the trial court's finding that Commodity was without such knowledge when it honored McFadden's Form R assignments was fully supported. But appellant's contention under its allegation that Commodity had knowledge is that Commodity's action in connection with its extension of time for redemption of the pledges held by it caused it to be charged with knowledge and to become liable without actual knowledge. Commodity gave notice which reached appellant that although the time to redeem was extended beyond the maturity date of the notes for which certificates were pledged, it would honor no assignments after some four months of the extended period had passed unless executed on Form R and presented within 15 days after execution. Appellant's theory is that in consequence of that action Commodity became subject to an obligation to make a special investigation of the assignments presented to it to see if the producers had not wrongfully sold out twice. It is assumed that Commodity's policy made it probable that the producers would do so. But the record convinces that Commodity had no reason to believe that the holders of Form R assignments presented for redemption after July 31, 1940, would be second assignees of the producer-borrowers. It was handling at one time about 300,000 notes on the 1938 cotton crop secured by many times that number of warehouse receipts and not more than one or two percent of them were sold twice by the producers. The mere possibility that a Form R assignment might be a second one and therefore invalid, could not impose the impossible task of investigating each of them in the field upon Commodity. The rights assigned being choses in action, the assignments were of no effect against the pledgee until it had notice thereof, and though ample opportunity was given appellant to lodge such notice with Commodity, it did not choose to do so. Appellant's circumstantial evidence to show a line of investigation Commodity might have pursued in this case to acquire knowledge was not impressive. Some of the producer defendants borrowed on and pledged warehouse receipts for a number of bales of cotton together at one time and then assigned all the receipts to the same assignees, and appellant under its assignments redeemed some of the receipts from the loan without taking them all up. It was argued that such redemption of part of the pledge would suggest probable ownership and retention by appellant of the other part. But the evidence was that it was Commodity's policy to permit a partial redemption of receipts securing a note; that a request for partial redemption referred to the note for identification purposes but listed only the receipts to be redeemed; that a request for partial redemption contained nothing to indicate that the person making the request held assignments covering the right to redeem the remainder of the receipts, securing the note; and that in many instances producer-borrowers made partial assignments covering various grades and staples of cotton securing a single loan. Consequently a partial redemption by appellant did not of itself afford notice that appellant held assignments of the right to redeem the remainder of the receipts. The court's findings that Commodity did not act in concert with McFadden to defraud appellant or to effect concealment, and that it did not know of appellant's assignments,

are supported by the evidence and are not clearly erroneous. Commodity was accordingly entitled to the judgment of dismissal of the suit against Commodity on the merits.

*Former Adjudication.*

█ The cotton warehouse receipts of which appellant in this case claims to have acquired ownership through assignments are admittedly some of the 2,478 receipts to which appellant asserted ownership through the same assignments in its former action, No. 741, against Commodity. It was the gist of that action that Commodity had received and held the appellant's 2,478 receipts in pledge to secure certain notes and charges and was bound upon tender of payment of the notes and charges by appellant to deliver the receipts to appellant as such owner through said assignments, but that Commodity, notwithstanding legal tender and demand, duly made by appellant, breached its obligation and refused to deliver.

A cause of action was stated in respect to each receipt claimed by appellant which, however, appellant chose to and had the right to join in the one action covering 2,478 receipts. At the time that action was brought, appellant did not know which of its receipts were still in Commodity's possession and accordingly the form of the prayer was (1) for discovery; (2) to enjoin sale or disposition of the receipts; (3) and to have restitution of all the receipts on payment of the liens against them. There was an additional paragraph, (4) praying judgment for the value of plaintiff's cotton disposed of by Commodity after appellant had made demand therefor. Disclosure was made as prayed and in the course of the proceedings in the case the rights of the appellant against Commodity were determined in respect to each and all of the receipts pledged to Commodity, assigned subject to the pledge to appellant, and claimed upon in the complaint in the action. The court adjudicated all of such rights of appellant against Commodity and finally disposed of the whole controversy by its judgment which awarded appellant recovery against Commodity only for the value of certain 286 receipts out of the 2,478 receipts sued for.

It is true the judgment did not specifically mention the 563 receipts which were redeemed by McFadden under his second assignment and which are involved in the present action. But it is nonetheless evident from the record in the former case that the court did there adjudicate directly in respect to them that Commodity was not liable to appellant for their value. They were shown in the action to have been redeemed by McFadden during May, June, and July, 1941, and the court took the view (in which all counsel on that trial concurred) that if appellant had not up until that time brought knowledge of the existence of its assignments home to Commodity, then Commodity would not be liable for according redemption to McFadden. The court's exclusion from its judgment of any recovery for the value of the 563 McFadden receipts followed upon and reflects the determination which it declared that appellant's disclosure of its assignments and demand upon Commodity was not made until after McFadden had made redemption. Whether right or wrong, that adjudication barred recovery by appellant in any subsequent suit against Commodity to subject it to liability for the same act of according redemption to McFadden and denying delivery to appellant of the receipts claimed by it.

The contentions for appellant to the effect that the cause of action alleged in this present action is different from, and was not adjudicated in the former action, have been fully considered but have not persuaded. Different counsel have evolved a different theory of the law governing the obligations of Commodity towards persons who hold assignments which they do not disclose to Commodity and Commodity has no reasonable means to discover. But the publicly announced policy of Commodity and its practices thereunder were established and open to all in the former action. Appellant did not choose in that action to contend, as it does in this one, that constructive notice resulted therefrom. It chose instead to rely upon its evidence that Commodity had notice. That it chooses in this case to rely upon a different theory to prove the same ultimate fact of Commodity's knowledge and liability does not present a different cause of action.

18

### The Arkansas Statute of Limitations.

■ Appellant's cause of action against Commodity arises out of its claim that Commodity became obligated to deliver the cotton warehouse receipts to it upon appellant's demand and tender of the amount of the liens. It made such demand and tender as has been adjudicated in the action in No. 741 on July 25, 1941, and Commodity's refusal was expressed in writing within a few days. Then appellant's right to sue Commodity accrued and suit could be brought by appellant. Under the Arkansas statute an action for taking goods or chattels must be commenced within three years. Section 8928 of Pope's Digest of the Statutes of Arkansas. It did not bring this action until September 25, 1945, more than four years after it accrued, and the trial court rightly held that it was barred.

Appellant's contentions that it was entitled to sue Commodity within five years under Section 8938 of Pope's Digest of the Statute of Arkansas, applicable to actions based on fraud, have been considered but do not appear meritorious. Commodity's publicly adopted and well-understood policy in respect to the extension of time for the redemption accorded by it and the conditions upon which it would honor assignments during the latter part of the extended period was adopted and put into effect in good faith. It is not necessary to, and it is not decided in this case whether or not its action was valid and binding upon appellant, but appellant was neither deceived nor defrauded, and neither was Commodity charged with any special or peculiar trust towards appellant. The action which appellant brought against Commodity within the three year period was appropriate and sufficient in form to effectively accord and enforce all of appellant's rights against Commodity, and in view of the judgment therein it must be held that they were so accorded.

As no error is found to have been committed by the trial court in respect to the action against Commodity, the judgment of dismissal in its favor is affirmed.

### Opinion as to McFadden

■ McFadden defended the cause of action asserted against it on the merits and on the Arkansas three-year statute of limitations and was sustained by the trial court on both grounds. As to the statute, the appellant contends here as it did below, that the three-year statute covering "all actions for taking or injuring any goods or chattels" does not apply. In support of its contention appellant cites many cases in which defendant has accomplished the conversion of personal property in such a way, or has resorted to tricks or fraud so that a concealment of the fact of conversion is effected, and it is held that if the plaintiff has used reasonable diligence the statute is tolled, or in cases of fraud a different statute controls. But none of them is applicable to McFadden in this case. Having bought the cotton in the regular course of trade at the market price and completed the transactions in good faith with the agency of the government which held the pledge, McFadden obviously had neither motive nor occasion for concealment and there is no evidence of any on McFadden's part. Although appellant never had the cotton physically in its hands so as to be aware of its taking by McFadden in 1941, it had ample means of knowing exactly where it was when McFadden took it and it simply failed to exercise the reasonable diligence that an ordinarily prudent claimant of personal property would exercise under the circumstances. No decision from Arkansas cited to us appears to be contrary to the generally recognized law that the mere ignorance of his rights on the part of plaintiff suing for conversion of his personal property will not toll the statute of limitations and that a defendant does not commit a concealment by mere silence or failure to publish the fact that he is taking personal property. He must be guilty of some trick or contrivance tending to exclude suspicion or prevent inquiry. There must be reasonable diligence on the part of a claimant to personal property taken in conversion and the means of knowledge are the same in effect as knowledge itself.

An illuminative case cited from Arkansas is Meacham v. Mid-South Cotton Growers Ass'n, 196 Ark. 78, 115 S.W.2d 1078, 1081. Sixteen bales of cotton shipped by Meacham were taken over from the railroad company

by an unauthorized warehouseman. Meacham went to one Anderson who had formerly worked for the association to which the cotton should have been delivered, and asked him to locate it. Anderson located it and told Meacham that he had done so. The warehouseman then issued warehouse receipts transferable by bearer to Anderson and Anderson negotiated them for value to a bank. More than three years later Meacham sued the warehouseman and the bank for the value of the cotton and the court held his action barred by the three year statute. It pointed out that the taking of the cotton by the warehouseman from the railroad company was a conversion of Meacham's property "for which an action might have been brought immediately, and from which time the statute of limitations began to run." It also declared that even on the theory that the relationship of bailor and bailee arose between Meacham and the warehouseman "The delivery of these receipts to one not entitled to receive them was a renunciation of the relationship of bailor and bailee, if such existed, and was as much a severance of that relationship as if the cotton itself had been wrongfully delivered. The statute of limitations certainly began to run as of the date the receipts were delivered." As to the receipts which were negotiated to the bank, the court said that the circumstances were such as to put Meacham on inquiry as to their disposition and he "could have proceeded to recover the value of the cotton."

Although appellant protests that it could not find out the names of the persons to whom Commodity delivered the receipts in question at or about the time of the transactions, the finding of the trial court that appellant did not use reasonable diligence to do so is not clearly erroneous. Commodity's notice conveyed to appellant in April of 1940 that it would renounce any relationship to holders of assignments like appellant's after July 31, 1940 was, on appellant's theory of the case, a declaration by Commodity of intention to make conversion of appellant's receipts in its possession after that date, and there was testimony that Commodity would have disclosed the names of the persons to whom it had released the cotton if appellant had made request. The trial court's conclusion, in accordance with its findings, that the cause of action against McFadden was barred by the three year statute was not erroneous.

As to the merits of the action against McFadden, the decision of the trial court is in accordance with the general law governing the respective rights of the holders of first and second assignments as stated in section 173 of the Restatement of Law of Contracts: "Where the obligee * * * makes two * * * assignments of the same right each of which would have been effective if it were the only assignment, the respective rights of the several assignees are determined by the following rules: (b) Any assignee who purchases his assignment for value in good faith without notice of a prior assignment, and who obtains payment or satisfaction of the obligor's duty, or (iv) delivery of a tangible token or writing, surrender of which is required by the obligor's contract for its enforcement, can retain any performance so received". We do not find among the great number of cases cited from Arkansas any cases ruled by that court on the basis of the Restatement, but none is found to be in conflict with it or in disapproval of it. It can not be held that the decision of the trial court which permits the second assignee McFadden to retain the cotton warehouse receipts which it obtained under its second assignment, is contrary to the declared law of Arkansas.

The extensive and able briefs for appellant have been fully considered, but as no error has been found in the judgment appealed from, it is affirmed.