Elizabeth Anna **EGAN** and John H. Seiter as Administrators of the Estate of Eileen M. Seiter, Plaintiffs,

v.

**AMERICAN AIRLINES, INC.,**
Defendant.

**Civ. No. 19947.**

United States District Court
E. D. New York.

Nov. 20, 1962.

Bigham, Englar, Jones & Houston, New York City, for defendant, by Robert F. Ewald, New York City, for the motion.

Shatzkin & Cooper, New York City, for plaintiffs, by Burton S. Cooper, New York City, in opposition.

RAYFIEL, District Judge.

On February 3, 1959, Eileen M. Seiter, a resident of the County of Kings, City and State of New York, was a passenger on an aircraft owned and operated by the defendant, then on a flight from Midway Airport in Chicago, Illinois, to La Guardia Airport in Queens County, New York. On its approach thereto the aircraft crashed into the East River, causing the death of Mrs. Seiter and other passengers aboard.

On April 27, 1959 the Surrogate of Kings County issued Letters of Administration on her estate to her mother, Elizabeth Anna Egan, and her husband John H. Seiter, both of whom were residents of the State of New York.

On July 22, 1959 the complaint herein was filed in the office of the Clerk of this Court, and on July 23, 1959 the sum-

mons and complaint were served on the defendant, which served its answer on August 12, 1959 and filed the same in the office of the Clerk on August 13, 1959.

The complaint states a claim for damages for the wrongful death of Mrs. Seiter. Jurisdiction is based upon diversity of citizenship. The complaint alleges that the decedent was a resident of Kings County and that the defendant "was and now is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, and conducts business in the City and State of New York, County of New York."

When the answer was served and filed the defendant, acting pursuant to Rule 68 of the Federal Rules of Civil Procedure, offered to allow judgment to be taken against it in the sum of $8,300.

In June 1962, almost three years after the commencement of this action, the defendant made this motion to dismiss the complaint "on the grounds that this Court lacks jurisdiction of the subject matter of the action because of the lack of a diversity of citizenship between the parties hereto." After several adjournments the motion was argued on September 26, 1962.

The defendant admits that it was incorporated under the laws of the State of Delaware, but contends that it has its principal place of business in New York City and, as provided by Section 1332(c) of Title 28 U.S.Code, is also a citizen of the State of New York. Consequently, it points out, there is no diversity of citizenship between the parties and this Court has no jurisdiction of the action.

The defendant is a major air carrier, operating routes throughout the United States and various foreign countries pursuant to authority granted it by the Civil Aeronautics Board. Its executive offices are located in the Borough of Manhattan, City of New York, where its President, Treasurer, Controller and twenty-eight Vice-Presidents in charge of various departments make their headquarters. In addition to its said executive offices it maintains Flight Operations offices at La Guardia Airport in Flushing, Queens County, New York City, in charge of a Vice-President stationed there. At the time of the accident 5,775 of its 21,555 employees were employed in New York State.

The plaintiffs deny that the defendant's principal place of business is in New York. They argue that the major portion of its activities are conducted *outside* of the State of New York. Attached to their memorandum is a "Schedule of Factors Which Reflect the Major Activities and Situs of Operations by State", of the defendant in 1959. It contains an analysis of ten factors in the operation of the airline and shows that New York leads in only one, namely, "Station Headcount", whereas California leads in three: "Revenue Passenger Miles", "Land and Buildings", and "Originating Receipts", Texas in three: "Certified Route Mileage", "Flight Equipment" and "Operating Expenses", and Oklahoma in three: "Maintenance and Engineering Equipment", "Material and Supplies Inventory" and "Overhauling."

They contend that the Senate Report of its consideration of Subsection (c) of Section 1332 of Title 28 U.S.Code, clearly indicates its purpose and intent. The Report (U.S.Code Congressional and Administrative News, 85th Congress, Second Session, 1958, Vol. 2 p. 3102) reads in part as follows:

"Because of these circumstances, and others, the Judicial Conference of the United States has recommended that the law be amended so that a corporation shall be regarded not only as a citizen of the State of its incorporation but also as a citizen of the State in which it maintains its principal place of business. This will eliminate those corporations doing a local business with a foreign charter but will not eliminate those corporations which do business over a large number of States, such as the railroads, insurance companies, and other corporations whose businesses are not localized in one particular State. Even such a corpo-

ration, however, would be regarded as a citizen of that one of the States in which was located its principal place of business."

The defendant relies principally on the case of Scot Typewriter Co. v. Underwood Corporation, D.C., 170 F.Supp. 862, at page 864, in which Judge Weinfeld said,

"Where a corporation is engaged in multistate activities, with offices, facilities or plants in various states, the issue of the location of its principal place of business cannot be resolved by fragmentation of its activities at specific places. It is not answered by a separation of corporate activity into component parts. The issue must be resolved on an over-all basis. It is governed by the totality of corporate activity at a given place, which, to borrow a phrase from another area of law, may be said to represent the 'center of gravity' of corporate function."

He said further, at page 865,

"Where a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective. The test applied by our Court of Appeals, is that place where the corporation has an 'office from which its business was directed and controlled'—the place where 'all of its business was under the supreme direction and control of its officers'.

"In the instant case, policy determinations are made in New York; direction and control of corporate affairs, as the function appears to be carried out by executives in New York, is supreme and encompasses every phase of the defendant's activities—production, sales, distribution, advertising, public relations and all other related facets. Under the circumstance, the conclusion is compelled that the defendant's principal place of business is in New York and accordingly there is no diversity jurisdiction."

The theory enunciated by Judge Weinfeld in the Scot Typewriter case, supra, has come to be known as the "nerve center" or "center of gravity" theory, which, as he pointed out, has been favored by our Court of Appeals. There has also evolved, however, a standard or test which has been referred to as the "operating assets" theory. See Textron Electronics Inc. v. Unholtz-Dickie Corporation, D.C., 193 F.Supp. 456. The latter theory was enunciated by the Court of Appeals for the Third Circuit in the case of Kelly v. United States Steel Corporation, 284 F.2d 850.

The Court there held that the defendant's principal place of business was in Pennsylvania, despite the fact that its executive offices were located in New York City, where many of its chief executives maintained offices. It reached that conclusion after considering *all* of the corporation's activities, including the physical location of its plants and the sources of its productive capacity. It pointed out, however, that the affairs of the corporation are conducted by the Operation Policy Committee, which sat in Pennsylvania. This Committee, to which the Board of Directors had delegated the duty of conducting the corporate business relating to manufacturing, mining, transportation and general operation, consisted of the Chairman of the Board, the President, the Chairman of the Finance Committee, the General Counsel and the seven Executive Vice Presidents.

■ Manifestly, therefore, the determination of the location of a corporation's principal place of business depends on the facts in each case.

■ In the case at bar, I am convinced that the management, direction and operation of the defendant's airline is centered in its offices in New York. It

is there that almost all of its officers are located, including its President and twenty-eight Vice-Presidents in charge of such departments as Finance, Schedules and Utilization, Sales and Services, Purchases and Stores, Economic Research, Properties and Facilities, Flight Administration, Development Engineering, Corporate Planning, Public Relations, Advertising, Passenger Sales, Cargo Sales and Service, Personnel and many others, all, with their personnel, functioning at the Executive Offices in New York City. It is there, also, that its Vice President-General Counsel, its Vice President-Secretary, its Vice-President-General Manager and Vice President-Controller are located, as well as its Treasurer and Corporate Controller. Of course the defendant has offices and facilities in other places, too, such as Tulsa, Oklahoma, Washington, D. C., Los Angeles, San Francisco and Chicago, each in charge of one or two Vice-Presidents. However, although it may repair and service most of its aircraft in Oklahoma, fly more miles in Texas, and carry more passengers in California, its general overall management and business policy is prescribed in and directed from New York.

Accordingly, I find that the defendant's principal place of business is located in New York, and, therefore, that it is a citizen of that State, as provided by Subdivision (c) of Section 1332 of Title 28 U.S.Code. Hence, there is no diversity of citizenship between the parties.

As hereinabove stated, the defendant waited almost three years before raising the jurisdictional question urged here. Attention is called to the fact that Section 23 of the New York Civil Practice Act provides that

> "If an action is commenced within the time limited therefor, and a judgment therein is reversed on appeal without awarding a new trial, or the action is terminated *in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits,* the plaintiff * * * may commence a new action for the same cause after the expiration of the time so limited and within one year after such a reversal or termination." (Emphasis added).

See Gaines v. City of New York, 215 N. Y. 533, 109 N.E. 594, L.R.A.1917C, 203; Gustafson v. A–B Svenska Amerika Linien, 258 A.D. 734, 14 N.Y.S.2d 905; Luoma v. Spearin, Preston & Burrows, Inc., 282 A.D. 612, 126 N.Y.S.2d 543.

The motion to dismiss the complaint is granted. Settle order on notice.