**B. C. HUGGINS, Plaintiff,**

v.

**WINN–DIXIE GREENVILLE, INC.,
Defendant.**

**Mrs. Lois BALLARD, Plaintiff,**

v.

**WINN–DIXIE GREENVILLE, INC.,
Defendant.**

**Myrtle RHODES and Albert Rhodes,
Plaintiffs,**

v.

**WINN–DIXIE GREENVILLE, INC.,
Defendant.**

**Civ. A. Nos. AC–1038, AC–1341, AC–1383.**

United States District Court
E. D. South Carolina,
Columbia Division.

Sept. 18, 1964.

John A. Martin, Henry H. Edens, Henry Hammer, Columbia, S. C., for plaintiff Huggins.

Yancey A. McLeod, Columbia, S. C., for plaintiff Ballard.

Isadore E. Lourie, Henry Hammer, Columbia, S. C., for plaintiffs Rhodes.

J. Monroe Fulmer, Columbia, S. C., for defendant.

SIMONS, District Judge.

These three cases involve tort claims against the defendant corporation for damages allegedly caused by the negligent and wrongful acts of the defendant, its agents, servants and employees. The defendant made Motions to Dismiss in Civil Action No. AC–1341 and Civil Action No. AC–1383 upon the ground that this court does not have jurisdiction under 28 U.S.C.A. § 1332. In the Huggins Case, AC–1038, defendant made a Motion to Amend its answer dated February 14, 1963, to allege lack of jurisdiction of this Court on the same ground as raised in the Motions to Dismiss in the other two subject suits. With consent of counsel, the actions were consolidated for a hearing on the Motions to Dismiss and on the Motion to Amend. The hearing was held in Columbia, S. C. on June 15, 1964; full oral arguments were heard by the court at that time, and subsequently counsel for all parties submitted written briefs and arguments in support of their contentions.

In regard to defendant's Motion to Amend its answer in AC–1038, so as to question the jurisdiction of this court, it is well settled that the question of jurisdiction can be raised at any stage of the proceedings. McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Scrog-

gin Farms Corporation v. McFadden, 8 Cir., 165 F.2d 10; Burks v. Texas Co., 5 Cir., 211 F.2d 443; Johnson v. Fredrick, 8 Cir., 9 F.R.D. 616. Accordingly, the Motion to Amend shall become a moot question if the Court finds that it is without jurisdiction to entertain these suits.

The defendant alleges that the court does not have jurisdiction under the 1958 Amendment of Section 1332 of Title 28. Section 1332 states:

"[a] The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

"[1] citizens of different States;

"[c] For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

 The purpose of the 1958 Amendment was " * * * to narrow jurisdiction, not to broaden it, and the act does not give an option to a plaintiff of treating a defendant corporation as a citizen either of state of incorporation or of state where its principal place of business is located." Canton v. Angelina Casualty Company, 279 F.2d 553 [5th Cir. 1960].

The court further stated at page 554:

"The statute prevents a corporation, essentially local, from taking advantage of being chartered in a foreign state. At the same time it also prevents local residents from taking advantage of the fact that a company has a foreign charter. Here, Texans are asserting a claim against a Texas company[1] under the Texas Workmen's Compensation Law and are in the position of urging that they should be in federal court because Texas courts will not give them a fair shake. This is no case for federal courts."

It is the contention of the defendant that, although it is incorporated under the laws of the State of Florida, it is domesticated to do business in the State of South Carolina and has its principal place of business in this State; therefore, under the provisions of Section 1332[c], it is a "citizen" of South Carolina; hence, the plaintiffs and the defendant are all citizens of the State of South Carolina, and this Court is without jurisdiction. There is no question that the defendant corporation was incorporated in the state of Florida, and that the amount in controversy exceeds $10,000 as required by the statute.

 The burden is on the plaintiff to show facts vesting the court with jurisdiction, especially when the court's jurisdiction is challenged. McNutt v. General Motors Acceptance Corp. supra; In Re: Chaney, 39 F.Supp. 696, [D.C.W.D. Va.1941]; Industrial Electronics Corp. v. Cline, 330 F.2d 480, [3rd Cir. 1964].[2]

 From the affidavits in support of defendant's Motion presented at the hearing and the depositions of the Vice President and General Manager, and the Assistant Secretary and Treasurer of the defendant corporation, I am constrained to find that the plaintiffs have failed to prove by a fair preponderance of the evidence that this court is vested with jurisdiction under 28 U.S.C. § 1332. The weight of the evidence before the court clearly indicates that the defendant corporation's principal place of business is South Carolina, thus establishing it a citizen of this State under the terms of Section 1332[c], supra.

Inasmuch as there is no single test by which a Court can determine where a corporation's principal place of business is located, the court must "endeavor to pick out as best we can the factor or combination of factors that seem to point

---

1. Defendant corporation was incorporated under laws of the State of Delaware.

2. See cases cited therein at p. 482.

to one place as the 'principal' place of business." Kelly v. United States Steel Corp., 284 F.2d 850 [3rd Cir. 1960]. In this recent leading case, as in ours, it was urged "that the test should be where the 'nerve center' of the corporation's business is." It was argued that the nerve center of the U. S. Steel Corp. was in New York for the following reasons: Its federal income tax returns are filed there; its Board of Directors regularly meets there; the Chairman of the Board and Secretary reside in New York and the President divides his time between New York and Pennsylvania; the Executive and Finance Committees regularly meet in New York; its Public Relations Department is there; its annual report is mailed from there, dividends are declared and its major banking activities are carried on there. Final decisions of important corporate matters through the Board of Directors, President and other top executive officers are made in New York State.

In spite of all such corporate activities which the court found centered in New York, it was concluded that Pennsylvania and not New York was "the principal place of business." In support of its determination the court pointed out that the Operation Policy Committee sits and conducts its affairs in Pennsylvania; seven Executive Vice Presidents have headquarters and staffs there; its counsel is in Pittsburgh as well as all but one of seventeen Administrative Vice Presidents and twenty-two of twenty-five Vice Presidents. Pennsylvania has 32.13 percent of employee personnel, more than one-third of its tangible personal property, 35% of its total steel productivity, and a majority of the "day-to-day corporate activity and management." The court at page 854 concluded:

"All this points to us the conclusion that business by way of activities is centered in Pennsylvania and we think it is the activities rather than the occasional meeting of policy-making Directors which indicate the principal place of business."

Counsel for plaintiffs contend that the principal place of business of a corporation for jurisdictional purposes is the "nerve center" from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale in the furtherance of the corporate objective. Scot Typewriter Co., Inc. v. Underwood Corporation, D.C., 170 F. Supp. 862; see also Wear-Ever Aluminum, Inc. v. Sipos, 184 F.Supp. 364 [D.C.N.Y.1960] and Lancer Industries, Inc. v. American Ins. Co., 197 F.Supp. 894 [D.C.W.D.La.1961].

The affidavits and depositions before the court here reveal the following facts about the activities of the defendant corporation: The executive offices of the defendant corporation are located in Greenville, South Carolina. The President, Vice President and General Manager, the Assistant Secretary and Treasurer and all the supervisory personnel, excluding store managers, have offices and live in and around Greenville, South Carolina. The principal bank account of the defendant is located there and all checks for supplies, merchandise, and the like, are drawn on this account. No checks are issued from any State other than South Carolina. The defendant has a complete bookkeeping system and staff set up in Greenville, and duplicate copies of these records are not kept anywhere else. *The day-to-day operation and planning of the company is carried on in Greenville.* The Vice President and General Manager have a meeting once a week with the grocery merchandiser, the meat merchandiser and the produce merchandiser, together with three district managers and the retail sales supervisor. This committee plans promotion, each merchandiser presents the program for his department, and the head of the advertising department presents a layout of ads. The programs and ads are then either approved or disapproved by Mr. Kay, the Vice President and General Manager. This committee has full authority to make these policies and estab-

lish the prices in each merchandising department. The income tax return of the corporation is filed in South Carolina. The return is made up in Greenville and signed there by the Assistant Secretary and Treasurer, Mr. Gibbes.

The company operates sixty-eight retail grocery stores and a warehouse. All sixty-eight stores and the warehouse are located in South Carolina. Approximately 2,200 persons are employed by the defendant, with only ten or twelve, other than truck drivers, ever performing services outside of this State. The warehouse facilities are used to service the sixty-eight stores operated by the defendant in this State, as well as stores in parts of North Carolina, Georgia and Tennessee. Servicing the out-of-state stores consists of shipping merchandise ordered by them. The out-of-state stores are owned and operated by separate corporations; however, the fixtures in these stores are owned by the within defendant. The total assets of Winn-Dixie Greenville, Inc. total approximately twelve million dollars, of which seven million dollars are in inventories, and five million dollars are in net book value of fixed assets. With the exception of a minor amount temporarily stored outside of the State, all of this inventory is located in South Carolina. The fixed assets represent the warehouse in Greenville, the fixtures in the sixty-eight stores operated by the defendant in this State, and the fixtures in the stores in North Carolina, Georgia and Tennessee, which it services. Of the fixed assets owned by the defendant, at least 65% are located in this State. The records showing the amount of merchandise shipped out of the warehouse to the non-owned stores in North Carolina, Georgia and Tennessee are kept in Greenville by its accounting department. However, a separate set of books is kept for each corporation. The merchandise stored in its warehouse for shipment to the various stores is purchased in Greenville by employees of the defendant. Brokers make appointments and come to the defend-

ant's offices located in Greenville. The total retail sales by the defendant last year amounted to approximately seventy-six million dollars, all of which were made by stores located in this State. Practically all of the day-to-day business activity of the defendant is carried out in South Carolina.

In opposition to the foregoing facts, counsel for the plaintiffs herein contend that the "nerve center" and control of the defendant corporation is in Florida, and that therefore it is a citizen of Florida rather than South Carolina. Scot v. Underwood, supra. In support of this contention, they argue that Winn-Dixie Stores, Inc., [the parent corporation with its principal offices in Jacksonville, Florida] owns the entire capital stock of the defendant corporation; that the annual meetings of the stockholders of the defendant are held in Jacksonville; that the defendant's Board of Directors meets there, and that the Jacksonville office is headquarters for the entire Winn-Dixie Company, Inc., the parent company. Also, plaintiffs point out that the deposition of Frank H. Gibbes, Jr., the Assistant Secretary and Treasurer of the defendant company, establishes that the general supervision of accounting and other administrative procedures is exercised in Jacksonville, Florida; that reports are sent to Jacksonville; that the profits of the defendant corporation are transferred there; that all legal matters are handled by the legal department there; that the decision as to whether a new store should be opened is finalized there; and that defendant does not own the stores in South Carolina but only leases them.

In reaching the conclusion that the defendant's principal place of business is located in South Carolina rather than in Florida, this Court has been guided by the underlying principle, evident in all the cases considered by the court and cited to us by counsel for the parties, that the paramount consideration in determining where the principal place of business of a corporation is lo-

cated is a factual question to be determined on a case to case basis as to where the principal day-to-day business operations and activities of the corporation are formulated and carried out. Such is not necessarily the meeting place of policy making directors, location of executive offices, or the state of its incorporation. Canton v. Angelina Casualty Co., supra; Kelly v. United States Steel Corp., supra; Herschel v. Eastern Airlines, Inc. [D.C.N.Y.1963] 216 F.Supp. 347; Egan v. American Airlines [D.C. N.Y.1962] 211 F.Supp. 292; Gilardi v. Atchison Topeka & Santa Fe Ry. Co. [D.C.Ill.1960] 189 F.Supp. 82; Potocni v. Asco Mining Co. [D.C.Pa.1960] 186 F.Supp 912; Mattson v. Cuyuna Ore Co. [D.C.Minn.1960] 180 F.Supp. 743.

From the evidence before the court I find that defendant's officers and employees who live and work in South Carolina, plan, direct, control, and carry out every phase of its daily activities, subject only to general supervision by the parent company, Winn-Dixie Stores, Inc., and that South Carolina is the situs of its principal business operations for which the corporation was organized— to operate retail grocery stores.

Having concluded that the defendant, Winn-Dixie Greenville, Inc., has its principal place of business in South Carolina, it must follow that the plaintiffs and defendant are, under the provisions of Section 1332[c] of 28 U.S.C.A., citizens of the same State, therefore the prerequisite for jurisdiction of this court, diversity of citizenship, is lacking, and it is the duty of this court to dismiss the actions. State of South Carolina v. South Carolina Electric and Gas Co., 41 F.Supp. 111, [E.D.S.C.1941]; E. K. Carey Drilling Co. v. Murphy, 113 F.Supp. 226 [D.C. Colo.1953]; Emmons v. Smitt, 58 F. Supp. 869, Aff'd. 6 Cir., 149 F.2d 869, cert. denied 326 U.S. 746, 66 S.Ct. 59, 90 L.Ed. 446. It is, therefore,

Ordered, that the within actions be, and the same are, hereby dismissed for lack of jurisdiction.