Owen MESSINGER

v.

UNITED CANSO OIL AND GAS LIMIT-
ED, the Catawba Corporation, John W.
Buckley, Albert H. Barton, Priscilla L.
Buckley, Benjamin W. Heath.

Civ. No. H–77–301.

United States District Court,
D. Connecticut.

Dec. 22, 1978.

James O'Connor Shea, New Haven, Conn., Sidney B. Silverman, New York City, for plaintiff.

Joseph A. McManus, Coudert Brothers, New York City, Joseph F. Keefe, Smith, Cornell, Smith & Mettling, Torrington, Conn., Irving R. Panzer, Washington, D.C., William R. Moller, Moller & Horton, Hartford, Conn., Gary A. MacMillan, James R. Hawkins, II, Cummings & Lockwood, Stamford, Conn., for defendants.

BLUMENFELD, District Judge.

## RULING ON MOTION TO DISMISS

This is a shareholder's derivative suit, brought by a single shareholder of United Canso Oil and Gas Ltd. (hereinafter referred to as "Canso"), a Canadian corporation. He is suing several of the directors of Canso, John W. Buckley, Priscilla L. Buckley, Benjamin W. Heath, and Albert H. Barton (hereinafter referred to as the "individual defendants"), and the Catawba Corporation, a Delaware corporation.

### I.

### FACTS

The complaint alleges, and the affidavits submitted in connection with the motions to dismiss establish, that Canso, an oil and gas producing company, contracted to obtain management and technical services from the defendant Catawba Corporation (hereinafter referred to as "Catawba"). The record does not reveal exactly what these services entailed. However, the contract provided that remuneration for the services was to be provided by the establishment, in favor of Catawba, of a 1/64th gross overrid-

ing royalty on each gas, oil, or mineral lease, permit, or reservation acquired by Canso. Catawba had, in turn, assigned these rights to defendants John W. Buckley, Priscilla L. Buckley, and Benjamin W. Heath, and one C. Dean Reasoner; all of whom were also members of the board of directors of Canso.

It appears that in January 1975, Canso's directors, including the individuals named above, voted to sell the company's wholly-owned British subsidiary, which itself owned an interest in oil and gas fields in the Irish and the North Seas. The buyer of the subsidiary was a German consortium, which, plaintiff alleges, paid $50 million for the mineral interests.

It was determined by the board, on the advice of counsel, that the royalty agreement with Catawba should be given effect in connection with this sale; and the board hired a petroleum consultant firm to evaluate the prospective oil and gas production from the subsidiary's holdings. The present value placed on these mineral interests for purposes of paying the royalty was $200 million, and the 1/64th interest was placed at $3,196,000. In May 1975 this amount was paid by Canso, by virtue of the assignment, to the individual defendant-directors here. Plaintiff, an owner of 100 of Canso's shares, alleges, on behalf of the corporation, that the payment should have been at most $781,250, which was 1/64th of the $50 million fair-market value of Canso's subsidiary's mineral holdings. He has brought this suit to recover the amount actually paid from the individual defendants and Catawba and also seeks $1 million in punitive damages.

The individual defendants and Catawba have moved to dismiss the case pursuant to Fed.R.Civ.P. 12(b) for lack of subject-matter jurisdiction, improper venue, lack of personal jurisdiction over an indispensable party, and failure to make demand on the shareholders. Defendant Canso has set up several of the same grounds as affirmative defenses. I shall first consider the challenge to this court's jurisdiction.

## II.

## DISCUSSION

### A. *Jurisdiction*

#### 1. *Introduction*

In ruling on the question of this court's jurisdiction, it is important, firstly, to emphasize that the plaintiff in a shareholder's derivative action is not the party who benefits from a judgment in his favor. This point was clarified by Justice Frankfurter in his classic dissent in *Smith v. Sperling*, 354 U.S. 91, 99, 77 S.Ct. 1112, 1119, 1 L.Ed.2d 1205 (1957):

> "The contrasting difference between a stockholder's suit for his corporation and a suit by him against it, is crucial. In the former, he has no claim of his own; he merely has a personal controversy with his corporation regarding the business wisdom or legal basis for the latter's assertion of a claim against third parties. Whatever money or property is to be recovered would go to the corporation, not a fraction of it to the stockholder. When such a suit is entertained, the stockholder is in effect allowed to conscript the corporation as a complainant on a claim that the corporation, in the exercise of what it asserts to be its uncoerced discretion, is unwilling to initiate. This is a wholly different situation from that which arises when the corporation is charged with invasion of the stockholder's independent right."

*See also, Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970).

Although the "beneficiary" corporation is named as a defendant, it is a nominal defendant only, and it is actually the real party in interest on the plaintiff's side. This duality raises two different issues regarding the jurisdiction of the court. First, how to align the defendant when determining the subject-matter jurisdiction of a federal court which is invoked solely on the basis of diversity of citizenship. The Supreme Court has made clear that for pur-

poses of determining diversity jurisdiction, the "beneficiary" corporation should be aligned as a defendant in "that any demand to rescind [the contested action] would be futile . . . ." *Smith v. Sperling, supra,* 354 U.S. 91, 97, 77 S.Ct. 1112, 1116, 1 L.Ed.2d 1205 (1957). *See also, Swanson v. Traer,* 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221 (1957).

Secondly, the duality raises a question of how a court ought to obtain personal jurisdiction over the corporation. In the context of the due process requirements of the Constitution in asserting personal jurisdiction, it is clear that the "bene-

ficiary" corporation ought not be considered adverse to the plaintiff. Unlike the truly adverse claims stated against "real" defendants, *see, e. g., Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the naming of the derivative corporation as a party defendant raises no potentially harmful consequences for the corporation, because plaintiff is acting solely for the corporation's benefit. Due process is therefore satisfied so long as the corporation has notice of the suit.[1] Similarly, venue is established wherever the corporation, as a plaintiff, "might have sued the same defendants," 28 U.S.C. § 1401.[2]

[1]. Defendants have objected to the method of service used by plaintiff to serve United Canso. Failure to serve this defendant properly would, because of its indispensability, require dismissal of the entire action. *See Koster v. Lumbermen's Mutual Co.,* 330 U.S. 518, 523, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). Although their argument is a tribute to the ingenuity of counsel, it thoroughly ignores the fundamental principle which determines the validity of the method of service used, namely, that the method be "reasonably calculated to reach interested parties," *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 318, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950).

Service on United Canso was accomplished in this case by the clerk of the court of this district mailing a copy of the summons and complaint to United Canso's headquarters in Calgary, Alberta, with a return receipt requested. This method of service was clearly valid as authorized by Fed.R.Civ.P. 4(i)(1)(D). This rule provides several methods of service on parties in a foreign country. It says:

"(i) Alternate Provisions for Service in a Foreign Country.

(1) Manner. When the federal or state law referred to in subdivision (e) of this rule authorizes service upon a party not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made: . . . (D) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served . . . ."

Since 28 U.S.C. § 1695 authorizes service "in any district where [the derivative corporation] is organized or licensed to do business or is doing business," this clearly "authorizes service upon a party not an inhabitant of or found within" Connecticut, as required by Rule 4(i); and the mailing provision therefore was available to the plaintiff.

There is not the slightest suggestion that this method failed to achieve notice to United Canso, or even that it was not the method best calculated to achieve this notice. *See* generally, *Greenberg v. Giannini,* 140 F.2d 550, 552 (2d Cir. 1944); *Glicken v. Bradford,* 204 F.Supp. 300 (S.D.N.Y.1962); 3B *Moore's Federal Practice* ¶ 23.1.21[3], at 23.1–110 to 23.1–113.

Defendants have also made mention of the impropriety of the original service upon defendants Heath and Catawba. Plaintiff has since re-served these defendants, and I assume that defendants' failure to raise objection to the second service indicates their waiver of any continued objection.

[2]. Defendants' contention that venue is improper in the District of Connecticut is patently without merit. Venue in derivative actions is based on 28 U.S.C. § 1401 which provides:

"Any civil action by a stockholder on behalf of his corporation may be prosecuted in any judicial district where the corporation might have sued the same defendants."

Title 28 U.S.C. § 1391(a) determines where the corporation, defendant United Canso, might have brought the action. That section provides, in pertinent part:

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose."

It is alleged by plaintiff, and undisputed by defendants, that all the named defendants, for venue purposes, reside in Connecticut. There is a dispute over where the defendant United Canso resides, but it is the derivative corporation, and, under section 1401, it is not considered a defendant for purposes of establishing where it might have sued the same defendants. *Industrial Waxes v. International Railways of Central America,* 193 F.Supp. 783, 788 (S.D.N.Y.1961).

## 2. Citizenship of Catawba.

■ In the instant case, it is clear that there is diversity between the shareholder-plaintiff, Messinger, a citizen of New York, and Canso, which is deemed a citizen of Canada by virtue of its Canadian incorporation. However, the doctrine of *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806) and 28 U.S.C. § 1332 would require complete diversity between the "real" defendants and plaintiff also. The individual defendants, John W. Buckley, Priscilla L. Buckley, Albert H. Barton, and Benjamin W. Heath are all citizens of Connecticut which would satisfy the statutory and constitutional requirement for complete diversity. Defendants argue, however, that there is not complete diversity, because under the language of 28 U.S.C. § 1332(c), the defendant Catawba Corporation should be deemed a citizen of New York state. That section, in relevant part, provides:

"For the purposes of this section . . , a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ."

Although incorporated in the state of Delaware, it is defendants' contention that Catawba's principal place of business, and therefore its citizenship, is in New York, the same state as plaintiff's citizenship.

■ An analysis of the case law interpreting the 1958 amendment which added the "principal place of business" provision to section 1332(c) is set forth in *Northeast Nuclear Energy Co. v. General Electric Co.*, 435 F.Supp. 344 (D.Conn.1977). That case attempted to identify the approach taken in the Second Circuit for determining a corporation's principal place of business. "[T]his circuit has leaned toward a 'consolidated test' looking to both the place where gener-

al management and business policy is formulated and to the site of substantial business operations." *Id.* at 346. *See also, Egan v. American Airlines, Inc.*, 324 F.2d 565 (2d Cir. 1963); *Danbury Bowlarama Corp. v. RCA Corp.*, 414 F.Supp. 354, 357 (S.D.N.Y.1976). But the language "principal place of business" and "site of substantial business operations" ought not be applied to any business enterprise with a rigid adherence to formulas and a disregard of the policies and purposes which these formulas were designed to serve.

"[I]f the purpose of diversity jurisdiction is to avoid the effects of prejudice against outsiders, then the principal place of business of a corporation should be the place where it has its greatest contacts with the public, where it 'most impinges,' where it is considered to be 'at home.' *Moore's Federal Practice, supra*, ¶ 0.77[3.–4] at 717.81. In most instances, that place is likely to be the site where actual business operations of the corporation are carried on since 'it is by *visible presence*, including the employment of local people, that a corporation will become popularly recognized as "domestic" rather than "foreign." ' *Inland Rubber Corp. v. Triple A Tire Service, Inc.*, . . . 220 F.Supp. [490], 495 [(S.D.N.Y.1963)]."

*Northeast Nuclear Energy Co. v. General Electric Co., supra*, 435 F.Supp. at 346 (emphasis added).

■ In the instant case we have the anomalous situation of a company which conducts many of its business transactions in one state (New York), but because of the nonvisible nature of that business, must be considered to have its principal place of business, for purposes of the statute, in a different state (Connecticut). It is my con-

---

In the body of the complaint plaintiff has listed three additional defendants: C. Dean Reasoner, Duncan A. McNaughton and Austin G. E. Taylor, who are directors of the defendant corporations. Although these individuals are named in the body of the complaint, and styled defendants therein, they have not been named in the caption as parties, and there is no indica-

tion that they have been served. Therefore, I find no basis for the Connecticut defendants' reliance on the residency of these individuals in their claim that venue is improper in this court. *See Neirbo v. Bethlehem Corp.*, 308 U.S. 165, 167–68, 60 S.Ct. 153, 84 L.Ed. 167 (1939). *See also*, 28 U.S.C. § 1391(c).

clusion that the "principal place of business" of the Catawba Corporation is at 37 Lewis Street, in Hartford, Connecticut.

Defendants have presented elaborate arguments to try to substantiate their claim that the company principally does business at the firm's townhouse-office building located at 103 East 37th Street, in the fashionable residential section of Manhattan known as Murray Hill.[3] They describe Catawba as "a corporation which provides services of various types—financial, technical (primarily oil gas and mineral), bookkeeping  .   .   .  to a number of corporations.  .  .  ."[4] Apparently much of Catawba's business involves meeting with representatives of companies and governments with which Catawba's client companies do business. The president of Catawba, defendant Benjamin W. Heath, actually spends most of his time filling the roles of an officer or director of at least seven of Catawba's client companies, and yet he is not on the payroll of those companies.[5] The same is apparently true of Catawba's chairman and chief executive officer, defendant John W. Buckley.[6] Both of these men apparently do very little in the operation of Catawba itself other than fulfill these roles, yet each is paid a salary of approximately $117,000 per year by Catawba.[7] When not traveling, both of them apparently do much of their work, i. e. dealing with other officials, at the 37th Street townhouse, because

the elegant and non-commercial nature of the site provides the privacy and luxury to which the company's and the clients' business contacts are accustomed. But these arguments, all suggesting the importance of a secluded, low-profile business operation in New York, strengthen the conclusion that for purposes of diversity jurisdiction, Catawba's principal place of business ought not to be determined as in New York City. The inherent nature of Catawba's business, as the defendants have characterized it, persuades me to find that the Connecticut location should be deemed the "principal place of business."

The defendants have painted the picture of a company whose only purpose is to provide services for other companies, and which does this in a residential neighborhood, with no listed telephone number, no public sign, and behind locked doors which can only be approached by coming into the view of closed-circuit television.[8] I do not draw any inferences from this secretive method of doing business. On the contrary, Catawba's business is its own business. My concern, however, is with a statutory concept: corporate citizenship. Catawba cannot conduct its business in this way in New York state and at the same time contend that in that way it has established corporate citizenship there; not, at least, when it maintains an alternate location where it presents a completely public face.

---

3. This is a building with no sign or other indication that business is conducted there. Affidavit of Mary L. Harnes, filed November 11, 1977, at 1–2; Affidavit of Sidney B. Silverman, filed February 1, 1978, at 2. In fact, defendants have asserted that

"Catawba does not conduct any business which the general public is invited to attend. Our clients are not the general public. Quite to the contrary, the low profile and visibility of Catawba in New York City is purposeful; we do not want the uninvited coming to this office, a practice which could be both disturbing and dissuading to important executives and foreign dignitaries who come often to this office for meetings with Catawba personnel and Catawba clients.

"  .  .  .  Catawba is a corporation that provides services for *other corporations* in the petroleum, energy and mineral fields, and

Catawba's business is virtually limited to this. It should be obvious from this that low visibility and inaccessibility to the public at large is intentional."
Affidavit of Benjamin W. Heath, executed November 29, 1977, at 2.

4. Affidavit of Heath, filed September 3, 1977, at 1.

5. Deposition of Heath, at 29, line 13 to 30, line 12; at 82, line 2;   at 84, line 7.

6. Deposition of Heath, at 55, line 22 to 56, line 10.

7. Deposition of Heath, Plaintiff's Exhibit 9.

8. Deposition of Heath, at 113, lines 8–22.

Defendants do not dispute that Catawba has its only public office at 37 Lewis Street, Hartford, Connecticut. It performs the entire accounting function for itself and its client companies at that location.[9] Its only telephone listing is at that address.[10] It maintains a listing on the office building's directory in the lobby and has its name on its door there.[11] It has its major checking account with the Hartford National Bank[12] and its public accountant is the Hartford office of Arthur Young & Co.[13] It issues its payroll, for both Hartford and New York employees, out of the Hartford office.[14] It files its federal tax returns, which, by statute, must be from its "principal place of business," from the Lewis Street address.[15] The president of the company (Heath) does business there two days out of the week,[16] and the vice-president and treasurer do all their business there.[17] I am not able to say that *most* of its business is transacted there, because the defendants themselves have prevented plaintiff, and the court, from gaining access to the financial data which would indicate the relative proportions of its gross income which is earned in each of the states.[18]

All of the above factors draw attention to the company in a way which would make it possible for people in Hartford to get some impression of Catawba as doing business there. With a calculated and careful effort, Catawba has successfully prevented any such impression from developing in the city of New York. It has chosen to establish an office outside of New York where it is accessible and visible to the public. The fact that it has done this in Hartford, and nowhere else, compels me to the conclusion that, under the unusual circumstances of this case, Hartford should be considered the principal place of business of the defendant Catawba Corporation, and it therefore should be deemed a citizen of Connecticut.

9. Deposition of Heath at 27, line 25; at 28, line 7; at 52, lines 23–25; at 96, line 3; at 97, line 1.

10. Affidavit of Sidney B. Silverman, filed November 11, 1977, Exhibits B and F.

11. *Id.*, Exhibits D and E.

12. Deposition of Heath, at 61, lines 2–3.

13. *Id.*, at 24, lines 20–21.

14. *Id.*, at 50, lines 24–25.

15. The Internal Revenue Code, § 6091(b)(2)(A) requires that a corporation file its return at the service center "in the internal revenue district in which is located the principal place of business or principal office or agency of the corporation . . . ." Catawba files its returns at the service center in Andover, Massachusetts which serves the district in which Hartford is located. Deposition of Heath, *supra*, Plaintiff's Exhibits 7 and 8. Thus, Catawba differentiated itself from New York City businesses, which are required to file their return at the service center in Holtsville, New York. 1976 Internal Revenue Service Instructions for Form 1120, U.S. Corporation Income Tax Return, Plaintiff's brief, filed February 1, 1978, Exhibit A.

16. Deposition of Heath, at 36, lines 16–22.

17. *Id.*, at 27, line 8; at 28, line 7; at 57, lines 14–17.

18. It should be noted that although defendants have been willing to provide generalized self-descriptions of the nature of the business of the Catawba Corporation, they have been reluctant to provide the court with many of the essential facts and figures which would facilitate a precise analysis of the question at issue. Most importantly, they have repeatedly refused to provide, even for *confidential* inspection, their gross income figures with an apportionment for their New York and Hartford operations. Deposition of Heath, at 78, line 5; at 80, line 6; at 91, line 3; at 94, line 12. Although the burden of alleging and proving "principal place of business" is initially on the plaintiff, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), *Yonofsky v. Wernick*, 362 F.Supp. 1005, 1017 (S.D.N.Y.1973), once facts have been alleged and proven which show that the Hartford locus of Catawba's business is the only one which is visible and accessible to the public, a prima facie case for diversity jurisdiction is established. The burden then shifts to the defendants to prove that the New York City location, intentionally shrouded in semi-secrecy, is more appropriately considered Catawba's principal place of business. *See Steinbock-Sinclair v. Amoco International Oil Co.*, 401 F.Supp. 19, 24 (N.D.Ill.1975); *Ostow & Jacobs, Inc. v. Morgan-Jones, Inc.*, 189 F.Supp. 697, 699 (S.D.N.Y. 1960). *See also Edwards v. Ainsworth*, 377 F.Supp. 200 (S.D.Iowa 1974). Defendants must therefore bear the risk of nonpersuasion when they obstruct the court's access to facts which would assist it in resolving the issue.

738

### B. Demand Upon Shareholders

Defendants have also moved to dismiss based on the provision of Fed.R.Civ.P. 23.1, which provides:

"The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort."

The allegation made by plaintiff to conform to Rule 23.1 states:

"14. Demand upon the shareholders of United Canso is unnecessary because such shareholders reside throughout the United States and several foreign countries. Demand upon them to bring this suit would be costly, time consuming, and place upon the plaintiffs an unfair and inequitable burden. In addition, the wrongs alleged are illegal and unlawful and cannot be ratified by the shareholders."

■ The defendants point out that plaintiff has not made a demand upon the shareholders of United Canso and argue that his claim is therefore barred. They base this argument on the law of Canada, the jurisdiction of United Canso's incorporation, *Foss v. Harbottle*, 2 Hare 461; 67 Eng.Rep. 189 (1843), the landmark English common law case which required a demand upon shareholders prior to bringing a derivative action on behalf of the corporation.

The sufficiency of the plaintiff's pleading, however, is measured, not by the law of Canada, but by Rule 23.1 of the Federal Rules of Civil Procedure. Although the rule incorporated the principle of a demand on shareholders, it has been authoritatively interpreted to be a flexible requirement, which could be excused when the financial burden on plaintiff would be onerous. *Levitt v. Johnson*, 334 F.2d 815, 817 (1st Cir.

1964), *cert. denied*, 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556 (1965); *Gottesman v. General Motors Corp.*, 268 F.2d 194, 197 (2d Cir. 1959) (dictum).

■ Based on a close analysis of the purposes and history of the rule, it has been held that where "the expense and effort necessary to bring the issues raised in this action before the shareholders of a publicly held corporation of this size" and combined with the unlikelihood of replacing the current board or achieving some intra-corporate remedy, "it would be unreasonable to require resort to the shareholders as a condition precedent to" the derivative action. *Weiss v. Sunasco Incorporated*, 316 F.Supp. 1197, 1207 (E.D.Pa.1970). *See Milstein v. Werner*, 54 F.R.D. 228, 230 (S.D.N.Y.1972).

In the instant case, at the time of suit there were over 5,900,000 shares outstanding, held by more than 11,800 shareholders who were located in all 50 states and the District of Columbia and in Canada.[19] The expense of contacting all of these shareholders would have been prohibitive for the plaintiff, as he has alleged. I therefore hold that a demand on shareholders in this case was not necessary and that plaintiff has adequately alleged his reasons for failing to do so.

### C. Lack of Collusiveness

■ Finally, defendants have added weight to their brief by arguing that dismissal is necessary because plaintiff has failed to explicitly allege that this suit is not a collusive one as required by Fed.R. Civ.P. 23.1(2).[20] However, plaintiff has alleged in his complaint that the suit "is not brought exclusively to confer jurisdiction upon this Court." This allegation, in my opinion, satisfies the requirements of rule 23.1(2). The requirement was designed to prevent collusion in the establishment of diversity jurisdiction. *See generally*, 3B *Moore's Federal Practice* ¶ 23.1.15[2]. In

---

**19.** Affidavit of John W. Buckley, filed September 13, 1977, at 3.

**20.** Rule 23.1 provides, in pertinent part:

"[T]he complaint shall . . . allege . . . (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have."

the circumstances of this case, where the derivative corporation is vigorously opposing jurisdiction, the requirement of rule 23.1(2) should not be viewed semantically. The specific words used to plead in conformity with the rule need not exactly trace its language.

Based on the foregoing discussion, the motions to dismiss the defendants Catawba Corporation, John W. Buckley, Albert H. Barton, Priscilla L. Buckley and Benjamin W. Heath are denied.

SO ORDERED.