Natalie MITCHELL, Administratrix and personal representative of the Estate of Lanny D. Mitchell, Plaintiff,

v.

MONONGAHELA POWER COMPANY, Defendant.

Civ. A. No. 83–A126.

United States District Court, S.D. West Virginia, Parkersburg Division.

Feb. 14, 1985.

R. Vance Golden, III, Robert K. Tebay, III, Parkersburg, W.Va., for plaintiff.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

### I. *Background*

The Plaintiff brought this wrongful death action pursuant to *W. Va. Code*, § 55–7–5, *et seq.*, against Monongahela Power Company alleging Monongahela Power's negligent ownership and maintenance of an electric service line proximately caused her husband's death when the service line became entangled with, or was magnetically drawn onto, the mobile home Plaintiff's deceased was moving beneath the line. The complaint alleged diversity jurisdiction to exist between Plaintiff, a West Virginia citizen, and Monongahela Power, a corporation alleged to be incorporated under the laws of the State of Ohio and a citizen of that state. *See* 28 U.S.C. § 1332. The Defendant moved the dismiss the complaint pursuant to *Rule* 12(b)(1) of the Federal Rules of Civil Procedure on the ground that the Court does not have diversity jurisdiction inasmuch as Monongahela Power's principal place of business is in West Virginia making it a citizen of West Virginia for diversity jurisdiction purposes.[1] The

---

1. *See* 28 U.S.C. § 1332(c):

 "For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...."

 Section 1332 was amended by Congress in 1958 to include, *inter alia*, this double citizenship test for corporations in order to restrict the federal courts' diversity jurisdiction. *Horton v. Liberty Mutual Insurance Co.*, 367 U.S. 348, 350–51, 81 S.Ct. 1570, 1571–72, 6 L.Ed.2d 890 (1961). In 1958 Congress also raised the long-standing $3,000 jurisdictional minimum to $10,000 in order "to check, to some degree, the rising caseload of the federal courts, especially with regard to the federal courts' diversity of citizenship jurisdiction." *Snyder v. Harris*, 394 U.S. 332, 339–40, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969). As a final measure, Congress enacted Section 1332(b) which authorizes the imposition of costs on a plaintiff who recovers less than

Court, by Memorandum Opinion and Order entered December 8, 1983, took under advisement Monongahela Power's motion to dismiss pending completion of discovery on the jurisdictional issue. The discovery having been completed on the jurisdictional question, the Court finds that Monongahela Power's motion to dismiss is mature for decision.

## II. *Discussion*

■ In diversity cases, the determination of the citizenship of the parties is a preliminary question of fact to be decided by the trial court. *Sligh v. Doe,* 596 F.2d 1169 (4th Cir.1979); *Webb v. Nolan,* 361 F.Supp. 418 (M.D.N.C.1972) *affirmed* 484 F.2d 1049 (4th Cir.1973). Once a Plaintiff's allegations of jurisdictional facts are properly challenged by a defendant, the plaintiff must support the allegations contained in the complaint by competent proof. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Thompson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1936); *Gibbs v. Buck,* 307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939). In the case at bar, such a challenge has been properly made by Monongahela Power through its motion to dismiss, *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 277, 57 S.Ct. 197, 200, 81 L.Ed. 183 (1936), wherein it alleges that its principal place of business is in Fairmont, West Virginia, and that, therefore, it is a citizen of West Virginia for purposes of diversity jurisdiction. *See* n. 1, *supra.* It is incumbent upon the Plaintiff, then, to demonstrate by reference to the evidence obtained through the discovery process that the jurisdiction of this Court has been properly invoked by proving, by a preponderance of the evidence, that Monongahela Power's principal place of business is in a state other than West Virginia. *See Hatfield v. Mullins Ford, Inc.,* 389 F.Supp. 278, 280 (W.D.Va. 1975); *Payton v. Freeze,* 49 F.R.D. 11, 14 (E.D.Va.1969).

In considering the question of where Monongahela Power's principal place of business is, two analyses may be used. One analysis is the "nerve center" test, which focuses upon the decision making functions of the corporation. *Scot Typewriter v. Underwood Corp.,* 170 F.Supp. 862 (S.D.N.Y. 1959). A second analysis focuses on the place of operation, that is, the situs of the corporation's tangible assets. *Inland Rubber Corp. v. Triple A Tire Service, Inc.,* 220 F.Supp. 490 (S.D.N.Y.1963). The Fourth Circuit has recognized each of the tests, but has adopted neither exclusively. *Mullins v. Beatrice Pocahontas Co.,* 489 F.2d 260, 262 (4th Cir.1974).

Commentators on the diversity statute suggest that the place of operations test is the one most consistent with the legislative intent:

> "Where a corporation has its executive or administrative offices in one state and its physical operations wholly or predominately in another state, courts have generally agreed with the *Inland* case finding the latter to be the principal place of business."

J. Moore and D. Wickstein, *Corporations and Diversity of Citizenship Jurisdiction: A Supreme Court Fiction Revisited,* 77 Harvard L.Rev. 1426, 1432 (1964). Also, at 13A, Wright & Miller, *Federal Practice and Procedure,* Section 3625 at 633 (1984), the authors state:

> "The legislative history of the statute supports the conclusion that emphasis should typically be placed on the locus of operations rather than where the policy making functions are carried out."

The academic support for the place of operations analysis appears well-founded. In *Nuclear Energy Co. v. General Electric Co.,* 435 F.Supp. 344, 346 (D.D.C.1977) the court approached the principal place of business question by determining where the corporation would be most visible, would have the most contact with the public, and where the corporation would consider its home, although the court conceded that no one fact would control. The focus in the *Nuclear Energy* case centered upon

$10,000 in a diversity action. *Horton,* 367 U.S.                at 350–51, 81 S.Ct. at 1571–72.

where the actual business operations of the corporation were carried out, where it employed people, and where a corporation becomes popularly recognized as a domestic corporation. 435 F.Supp. at 346.

In *Huggins v. Winn-Dixie Greenville, Inc.*, 233 F.Supp. 667, 671 (E.D.S.C.1964), the court held that a corporation with operations mostly in South Carolina but with corporate decisions being made in Florida was to be considered a citizen of South Carolina as the corporation's South Carolina operation made South Carolina its principal place of business. *See Riggs v. Island Creek Coal Co.*, 542 F.2d 339 (6th Cir.1976) (corporate headquarters did not govern where the profit making portion of the business was solely in another state); *Kelly v. U.S. Steel Corp.*, 284 F.2d 850, 854 (3d Cir.1960) (place of tangible assets of the corporation predominates over place where directors occasionally met); *Messinger v. United Canso Oil and Gas Ltd.*, 80 F.R.D. 730, 735–36 (D.Conn.1978) (place of business operations considered principal place of business). *See also Carnera v. Lancaster Chemical Corp.*, 387 F.2d 946, 947 (3d Cir.1967) (concluding that plaintiff failed to prove diversity and looking to place where business actually carried on); *Horwatt v. Paulsen-Webber Cordage Corp.*, 336 F.Supp. 1020, 1021 (W.D.Pa.1971).

■ The nerve center analysis, focusing attention on the decision making process within the corporation, is better suited where there is no clear center of corporate business activity. *Exxon Corp. v. Duval County Ranch Co.*, 406 F.Supp. 1367, 1369 (S.D.Tex.1975) (where business operations are in several states, administrative offices would control for purposes of determining principal place of business); *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y.1959) (where profit making enterprise is "far flung and varied", administrative offices controlled for purposes of determining principal place of business). The nerve center analysis is also preferred where there is no current enterprise in which the business is engaged. *Miner v. Commerce Oil Refining*

*Corp.*, 198 F.Supp. 887, 892–93 (D.R.I.1961) (business of the corporation not yet undertaken, thus the place of the administrative offices determined the principal place of business).

■ In the case *sub judice*, the discovery conducted on the jurisdictional issue discloses the following pertinent information regarding Monongahela Power's operations.

1. Monongahela Power is a wholly owned subsidiary of Allegheny Power System, Inc. and is engaged in the production, transmission, distribution and sale of electricity to residential, commercial and industrial customers. 1982 Annual Report at p. 1, attached to Hayes deposition as Exhibit No. 1.

2. Other than a "small area" centered around Washington County, Ohio, Monongahela Power's service territory lies entirely in West Virginia. Hayes deposition at p. 5. It has no operations in any other state. Hayes deposition at p. 5.

3. Of approximately 1,900 employees of Monongahela Power, a few are located in New York (mostly corporate officers of Monongahela Power who also hold positions with Allegheny Power System, Inc.), 25 are located in Ohio and the balance work in West Virginia. Hayes deposition at pp. 109–110.

4. All of Monongahela Power's regular customers are located in West Virginia or the small area of Ohio serviced by Monongahela Power. Hayes deposition at pp. 110–111.

5. The day-to-day operations of the corporation are carried out from Monongahela Power's headquarters in Fairmont, West Virginia. Hayes deposition at p. 108. General policy decisions and financial matters are handled through Allegheny Power System, Inc.'s headquarters in New York. Hayes deposition at pp. 21–22; Owens deposition at pp. 26–31.

6. Monongahela Power considers its headquarters and principal place of business to be in Fairmont, West Virginia.

Hayes deposition at p. 5; Owens deposition at pp. 21–22.

Because Monongahela Power generates virtually all of its revenue from the sale of electricity to West Virginia customers, transacts business almost exclusively in West Virginia and, with few exceptions, locates all of its employees in West Virginia, the Court finds that its operations are definitely not "far flung and varied" [2] and that the place of operations test is, therefore, controlling in deciding the situs of Monongahela Power's principal place of business. *See* cases discussed *supra*, at pp. 5–6. These same facts equally compel the Court to find that Monongahela Power's principal (and, essentially, only) place of business is in West Virginia. *See Nuclear Energy Co. v. General Electric Co.*, 435 F.Supp. at 346 (factors considered in determining principal place of business) discussed *supra* at pp. 4–5. Therefore, the Court concludes that it does not have jurisdiction to hear this matter inasmuch as both parties to this action are citizens of West Virginia for diversity jurisdiction purposes.

The conclusion that this Court does not have jurisdiction to preside over this action is mandated not only by the facts disclosed during the discovery process, but also by the rule that "the policy of the [diversity] statute calls for its strict construction." *Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934). This rule of strict construction of the diversity statute is in recognition of the principle that "the power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the Congress in conformity to the judiciary sections of the Constitution." *Nelson v. Keefer*, 451 F.2d 289, 294 (3d Cir.1971) *citing Kline v. Burke Construction Co.*, 260 U.S. 226, 233–34, 43 S.Ct. 79, 82, 67 L.Ed. 226 (1971). In addition to these constitutional arguments for careful exercising of federal diversity jurisdiction, the Court would note a very practical one: Were this Court to ignore the clear weight of the evidence produced during discovery and deny Defendant's motion to dismiss for lack of jurisdiction, the parties and counsel would be exposed to the very serious risk that any jury decision in this case would be held for naught by an appellate ruling that this Court had no jurisdiction to hear this case. The safe course, therefore, is to permit the parties to litigate this matter in state court where there is no question jurisdiction is proper. *See Burgess v. Charlottesville Savings and Loan Association*, 477 F.2d 40, 43 (4th Cir.1973) ("[I]t has often been held that federal courts must be alert to avoid overstepping their limited grants of jurisdiction. At any stage of a litigation, including the appellate, subject-matter jurisdiction may be questioned."); *Freeman v. Colonial Liquors, Inc.*, 502 F.Supp. 367, 369 (D.Md. 1980).

## III. *Conclusion*

For the reasons discussed above, the Court finds that both parties to this action are citizens of the State of West Virginia for diversity jurisdiction purposes and, therefore, concludes that this Court does not have jurisdiction to entertain Plaintiff's action. Accordingly, the Court having decided that Plaintiff has failed to establish the necessary facts to establish federal jurisdiction, this Court must dismiss this action pursuant to Monongahela Power's motion under *Rule* 12(b)(1). *Thompson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1938); *KVOS v. Associated Press*, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936); *Nelson v. Keefer*, 451 F.2d 289 (3d Cir.1971); *Gauldin v. Virginia Winn-Dixie*, 370 F.2d 167 (4th Cir.1966). In dismissing this action the Court notes that it does so without having reached the merits of Plaintiff's cause of action and, therefore, this dismissal is without prejudice to Plaintiff's right to reinstate this action in a proper forum. *See W.Va.Code*, § 55–2–18; *Tompkins v. Pacific Mutual Life Ins. Co.*, 53 W.Va. 479,

---

**2.** *Cf., Scot Typewriter Co. v. Underwood Corp.,*  170 F.Supp. 862, 865 (S.D.N.Y.1959).

44 S.E. 439 (1903). *Cf., Litten v. Peer*, 156 W.Va. 791, 197 S.E.2d 322 (1973).