## COLUMBIA GAS TRANSMISSION CORPORATION, Plaintiff,

v.

## BURDETTE REALTY IMPROVEMENT, INC., Defendant.

No. CIV.A. 2:00–0387.

United States District Court, S.D. West Virginia, Charleston Division.

July 5, 2000.

---

W. Henry Lawrence, IV, Amy M. Smith, William H. Smith, Steptoe & Johnson, Clarksburg, WV, for plantiff.

Brian A. Glasser, Thomas F. Basile, Bailey & Glasser LLP, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

The defendant Burdette Realty Improvement, Inc. ("Burdette") has filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure contending that this court lacks diversity jurisdiction. Burdette contends that Columbia Gas Transmission Corporation's ("Columbia") principal place of business is in West Virginia making it a citizen of West Virginia for diversity jurisdiction purposes. Columbia argues its principal place of business is in Virginia. The court finds that Burdette's contention is correct and **GRANTS** the motion to dismiss.

## I.

Columbia, a transporter of natural gas and operator of gas storage fields, brought this action for declaratory and injunctive relief to require Burdette to relocate its sewage treatment plant. As part of its business, Columbia transports natural gas through interstate pipelines and operates storage wells that inject and withdraw gas from storage fields. Columbia is the lessee of gas storage rights under two tracts of land situated in Kanawha County, West Virginia and operates Storage Well No. 7066 on the surface of the northern tract of land.

Burdette, the owner of the surface rights to the southern tract of land, recently constructed a sewage treatment plant within 125 feet of Storage Well No. 7066. Columbia seeks a declaration that the sewage treatment plant interferes with its setback rights relating to Storage Well No. 7066. Columbia also seeks a preliminary injunction requiring Burdette to relocate its sewage treatment plant at least 200 feet away from the storage well. Columbia argues that the sewage treatment plant causes harm to Columbia's nearby facilities, surrounding residents, and the environment.

Columbia predicates jurisdiction on diversity of citizenship pursuant to 28 U.S.C. § 1332. On the face of the complaint, the parties are diverse and the amount in controversy exceeds $75,000; Columbia alleges that it is a Delaware corporation with a principal place of business in Fairfax, Virginia, and that Burdette is a West Virginia corporation with a principal place of business in West Virginia. Burdette has not responded to the merits of Columbia's complaint or motion for preliminary injunction. Instead, Burdette filed the pending motion to dismiss for lack of diversity jurisdiction, challenging Columbia's assertion that its principal place of business is in Fairfax, Virginia. Burdette contends that both parties are citizens of West Virginia because Columbia's principal place of business is located in West Virginia, not Virginia.

## II.

A federal district court has original jurisdiction of all actions between citizens of different states when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). For purposes of determining whether a federal court possesses subject matter jurisdiction based on diversity of citizenship, a corporation is deemed "to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Id.* § 1332(c)(1). The parties do not dispute that Burdette is a citizen of West Virginia, the State in which it is both incorporated and has its principal place of business; it is also undisputed that Columbia is incorporated in Delaware. Therefore, unless Columbia's principal place of business is located in West Virginia as Burdette contends, the parties have the requisite diversity of citizenship to provide this court subject matter jurisdiction to hear the dispute.

The determination of a corporation's principal place of business is a preliminary question of fact to be decided by the district court. *See Sligh v. Doe,* 596 F.2d 1169, 1171 (4th Cir.1979); *Mitchell v. Monongahela Power Co.,* 602 F.Supp. 756, 758 (S.D.W.Va.1985) (Haden, C.J.). "The statute establishing diversity jurisdiction is to be strictly construed and all doubts are to be resolved against federal jurisdiction." *Frontier Energy Corp. v. Broda,* 882 F.Supp. 82, 85 (N.D.W.Va.1995) (Keeley, J.). When allegations of jurisdictional facts are challenged, the party seeking to enter federal court bears the burden of proving the facts giving rise to the jurisdiction. *See Mitchell,* 602 F.Supp. at 758.

The Fourth Circuit has endorsed two tests for determining a corporation's principal place of business: (1) the nerve center test; and (2) the place of operations test. *See Athena Automotive, Inc. v. Di-*

*Gregorio,* 166 F.3d 288, 290 (4th Cir.1999); *Mullins v. Beatrice Pocahontas Co.,* 489 F.2d 260, 262 (4th Cir.1974). The nerve center test focuses on the locus of the decision-making and control center of. corporate affairs and ordinarily is the location where the corporate directors and officers meet to decide corporate policy. *See Athena,* 166 F.3d at 290; *Mitchell,* 602 F.Supp. at 758. This test "makes the 'home office,' or place where the corporation's officers direct, control, and coordinate its activities, determinative." *Mullins,* 489 F.2d at 262. The place of operations test "looks to the place where the bulk of corporate activity takes place," *id.,* and focuses on the location of the corporation's tangible assets and the locus of day to day business operations. *See Grimm v. Plasma Processing Corp.,* 888 F.Supp. 56, 58 (S.D.W.Va.1995) (Haden, C.J.).

The nerve center test has been recognized as well-suited for corporations that have no clear center of corporate business activity because the corporation is engaged in "far-flung and varied" business operations that are carried on in different states. *See Mitchell,* 602 F.Supp. at 758–59; *see, e.g., Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862, 865 (S.D.N.Y.1959) (when corporation is "far flung and varied," administrative and executive offices controlled determination of principal place of business). It is also particularly useful in determining the principal place of business of a holding company or passive corporation that is "engaged primarily in the ownership and management of investment assets such as debt or equities [and] is not really geographically bound." *Peterson v. Cooley,* 142 F.3d 181, 184 (4th Cir.1998). With the exception of those limited circumstances, however, this court has noted that the place of operations test is most consistent with the legislative intent behind the diversity statute. *See Mitchell,* 602 F.Supp. at 758–59; *see also Broda,* 882 F.Supp. at 84.

[T]he legislative history of the statute supports the conclusion that emphasis typically should be placed on the locus of operations rather than where policymaking functions are carried out.

13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3625 (2d ed.1984).

■ That conclusion is supported by the principal purpose of diversity jurisdiction, which is to guarantee a non-citizen party a fair trial by limiting the potential effects of local prejudice against outsiders.

[A] corporation is more likely to have its greatest contacts with the public at its place of operations, through activities such as employment of personnel, purchasing of materials, and sales of goods and services. These dealings increase local familiarity with the corporation as a "citizen" of that state, free from the possible danger of local prejudice against outsiders.

*Id.* Thus, when possible, courts should typically look to where "the corporation would be most visible, would have the most contact with the public, and would consider its home." *AFA Enters., Inc. v. American States Ins. Co.,* 842 F.Supp. 902, 908 (S.D.W.Va.1994). In that location, the corporation is less likely to face local prejudice as an outsider. *See Industrial Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1094 (9th Cir.1990).

### III.

The parties are in dispute as to which test should be applied to determine Columbia's principal place of business. Columbia argues that the nerve center test should be applied, leading to the conclusion that its principal place of business is in Fairfax, Virginia, where its corporate officers are located. Burdette contends that the court should apply the place of operations test, asserting that the bulk of Columbia's corporate activities take place in West Virginia, where the majority of its employees are located.

■ In making the determination as to a corporation's principal place of business,

the court "may examine factors such as the location where business is carried out, where people are employed, where bank accounts are held, where assets are located, where taxes are paid and returns are filed, where administrative, accounting, and corporate records are kept, where meetings are held, etc. . . ." *AFA Enters.*, 842 F.Supp. at 908. Discovery has not been conducted on the jurisdiction issue, but the parties assert the following jurisdictional facts in their pleadings, briefs, affidavits, and exhibits, and submit the matter for decision by the court.

1. In the mid 1990s, Columbia relocated its executive and administrative offices from West Virginia to Fairfax, Virginia. O'Brien Aff. ¶ 6. Columbia moved most of its executive level officers and employees and the entire marketing department. *Id.* All determinations of rates filed with the Federal Energy Regulatory Commission for the price of Columbia's products and services are made in Fairfax, Virginia. *Id.* ¶ 8. Columbia's corporate meetings are held in Fairfax, Virginia, and the company also makes major hiring decisions there. *Id.* ¶¶ 15, 19. The senior officer responsible for financial matters is located in Fairfax, Virginia. *Id.* ¶ 17.

2. According to a 1996 press release, Columbia still had nearly 1,640 West Virginia employees after the corporate move. Burdette's Motion to Dismiss, Exh. 7 (Columbia Press Release dated June 24, 1996). The corporate move relocated merely 150 positions, less than 10% of Columbia's West Virginia work force, to Fairfax, Virginia. *Id.* Columbia's CEO and President, Catherine G. Abbott, stated in the press release that *"the largest concentration* of Columbia Transmission employees will continue to be here in West Virginia." *Id.* (emphasis added). The press release also announced that Colum-

bia's Charleston, West Virginia office would "continue to function as the *primary operations* and commercial support headquarters." *Id.* (emphasis added).[1]

3. Columbia delivers approximately 1.3 trillion cubic feet of natural gas per year to seventy two distribution companies and hundreds of end users in southern, northeastern, mid-western, and mid-atlantic states. O'Brien Aff. ¶ 7. Approximately 94% of the end users to whom Columbia delivers natural gas are located outside West Virginia. *Id.* Columbia's service territory includes Delaware, Kentucky, Ohio, Pennsylvania, New Jersey, New York, North Carolina, Maryland, Tennessee, Virginia, the District of Columbia, and West Virginia. *Id.* ¶ 13. Columbia is qualified to do business in each of those states, and its total revenues generated last year by sales in those states was $695,666,000.00. *Id.* ¶¶ 5, 13. Thirty-one percent of the total revenues were generated in West Virginia. *Id.* ¶ 14.

4. Columbia owns or controls assets worth approximately $3,149,600.00. *Id.* ¶ 9. These assets are primarily located in Delaware, Kentucky, Ohio, Pennsylvania, New Jersey, New York, North Carolina, Maryland, Tennessee, Virginia, the District of Columbia, and West Virginia. *Id.* Thirty-six percent of the assets are located in West Virginia. *Id.* ¶ 10.

5. Columbia owns real estate, and pays real estate taxes in Delaware, Kentucky, Ohio, Pennsylvania, New Jersey, New York, North Carolina, Maryland, Virginia, the District of Columbia, and West Virginia. *Id.* ¶ 11. In addition, Columbia owns and operates approximately 10,836 miles of natural gas pipelines, of which 77.5% are located outside West Virginia. *Id.* ¶ 12. In the 1996 press release, Columbia states that its Charleston, West Virginia office

---

1. The court notes that the press release is approximately four years old and recognizes that diversity jurisdiction depends on the citizenship of the parties at the time the action is commenced. *See Athena,* 166 F.3d at 290. Even though Columbia bears the burden of

proof, it does not challenge the factual statements in its 1996 press release. Thus, the court is free to, and does, conclude that those facts, or substantially similar facts, are still applicable to this analysis.

functions as the primary operational headquarters of the pipeline network. Burdette's Motion to Dismiss, Exh. 7.

6. According to its current web-site, Columbia states that its operations headquarters is located in Charleston, West Virginia. *Id.* Exh. 11.

7. In at least four pre-litigation letters from Columbia to Burdette during August 1999 to March 2000, Columbia's letterhead and address contained West Virginia addresses. *Id.* Exhs. 2–5.

8. In at least two complaints filed in this court within the past two years, Columbia has indicated that its principal place of business or primary center of operations is located in Charleston, West Virginia. *Id.* Exhs. 1, 6. In those cases, Columbia asserted that the court possessed federal question subject matter jurisdiction. *Id.* In cases in which Columbia has needed diversity jurisdiction to have the matter in federal court, however, Columbia has asserted that its principal place of business is in Fairfax, Virginia. Columbia's Opposition to Motion to Dismiss, Exhs. D, E, F.[2]

9. Columbia publishes an Electronic Contracting Agreement form on the internet that states that it is a Delaware corporation with offices in Charleston, West Virginia. Burdette's Motion to Dismiss, Exh. 8 (Electronic Contracting Agreement Form effective March 1, 2000).

10. Columbia publishes a list of key employees, their job titles, and their phone numbers on the internet. Almost all of the approximately one hundred individuals listed are located in West Virginia, as indicated by the area code. *Id.* Exh. 9 (Columbia Contact List).

11. Columbia's transportation and storage services are summarized on a three-page document on Columbia's web-site and direct anyone interested in requesting natural gas service to contact Columbia at its Customer Services and Commercial Services departments in Charleston, West Virginia. *Id.* Exh. 10 (Summary description of Columbia's Services).

12. Columbia publishes information on its web-site with respect to safety and how to reach Columbia in the case of an emergency. Those who have safety questions or an emergency issue are directed to contact Columbia at Charleston, West Virginia. *Id.* Exh. 12 (Pipeline Safety Information).

13. Columbia's corporate bank accounts are held in Pittsburgh, Pennsylvania. O'Brien Aff. ¶ 18.

■ Columbia argues that because it generates revenue throughout its eleven-state service territory and no one state constitutes a majority of the revenue generated, it is engaged in "far-flung and varied" business operations. The flaw in Columbia's argument, however, is that it focuses on its points of sale and delivery,

---

**2.** In at least two of those three cases cited by the plaintiff, Columbia amended its complaint to assert that it is a Virginia citizen for diversity jurisdiction purposes only after it was determined that federal question jurisdiction was lacking. For example, in *Columbia Gas Transmission Corp. v. Drain*, No. 2:99–127 (N.D. W. Va. filed Oct. 21, 1999), Columbia alleged that it was a Virginia resident after the Fourth Circuit held that the district court did not have federal question jurisdiction over the matter in *Columbia Gas Transmission Corp. v. Drain*, 191 F.3d 552 (4th Cir.1999). Likewise, in *Columbia Gas Transmission Corp. v. Stephens*, No. 3:99–00326 (S.D. W. Va. filed April 26, 1999), Columbia amended its complaint to assert that it is a Virginia

citizen after the court questioned whether it possessed federal question jurisdiction in light of the Fourth Circuit's opinion in *Drain*. These inconsistent pleadings at least reveal an ambivalence as to its principal place of business. It is clear, however, that other courts have continued to recognize West Virginia as Columbia's principal place of business even after the corporate move to Virginia. *See, e.g., Columbia Gas Transmission Corp. v. Lauren Land Co., Inc.*, 180 F.R.D. 322, 323 (E.D.Ky.1998) ("Columbia is also a citizen of West Virginia."); *Columbia Gas Transmission Corp. v. Davis*, 33 F.Supp.2d 640, 641 (S.D.Ohio 1998) ("Columbia Gas is a Delaware corporation with its principal place of business in West Virginia.").

rather than on the locus of its business operations. The increasing global interdependence of the business community has resulted in more corporations whose sales and corporate acts reach across state, regional, and national borders. It is the business operations of a corporation, however, that must be "far-flung and varied" to trigger application of the nerve center test, not simply the sales and results of those business operations.

Columbia further argues that even if it is not sufficiently "far-flung and varied" to trigger application of the nerve center test, Fairfax, Virginia should still be considered the principal place of business because no one state can be shown to contain the bulk of its business operations. In support of this proposition, Columbia cites to the fact that West Virginia only constitutes 36% of its assets and 31% of its revenues. A strict piece-by-piece mathematical analysis to determine whether one state constitutes the bulk of corporate business activity is not the appropriate test. Instead, a proper analysis focuses on the totality of relevant factors. *See AFA Enters.*, 842 F.Supp. at 908 ( [w]hen determining principal place of business, no single fact is controlling.).

Focusing on the corporate business operations, rather than the points of sale or delivery, is consistent with the purpose of diversity jurisdiction. A corporation's citizenship through the principal place of business prong of the diversity statute should be the place where it is most visible, has contact with the public, and generally considers itself home. *See id.* Corporations have the most visibility and contact with the state where the business operations take place and where the employees are located, not where the product is ultimately sold or delivered.

Here, Columbia's corporate operations in transporting natural gas are carried out in West Virginia. Columbia's points of sale or delivery are disbursed over ten states, but the bulk of the day to day business operations that create the sales or cause the delivery take place in West Virginia. Columbia's CEO and President was explicit in a 1996 press release that Columbia's Charleston office "will continue to function as the primary operations and commercial support headquarters for the company's ... natural gas pipeline network," and that "the largest concentration of Columbia Transmission employees will continue to be here in West Virginia." *See* Burdette's Motion to Dismiss, Exh. 7. Those words of Columbia's chief executive, the location of the bulk of its employees, the current Columbia website reference to Charleston, West Virginia as the "Operations Headquarters," and the web-site direction of all persons requesting service to the office in Charleston, West Virginia are strong evidence that Columbia's center of operations is in West Virginia.

Considering the totality of the jurisdictional factors in this case, the court is satisfied that Columbia's principal place of business is located in West Virginia. This conclusion is entirely consistent with the purpose of diversity jurisdiction. As Columbia proudly announces in its press release, "Columbia and its predecessor companies have been a part of West Virginia since the late 1800s ... and Columbia is pleased to be maintaining its long-standing relationship with the state." *Id.* Columbia brings numerous suits in West Virginia and is also often haled into state and federal court in West Virginia as a defendant. Because of its ties and "long-standing relationship" with the state, Columbia simply does not face the local prejudice as an outsider to West Virginia, which diversity jurisdiction in federal court is designed to eliminate.

### IV.

Because diversity is lacking, Burdette's motion to dismiss is GRANTED and this case is dismissed and stricken from the docket of this court. As the court did not reach the merits of Columbia's case, dis-

missal is without prejudice. Burdette's request for costs and fees associated with the motion is DENIED.

The court DIRECTS the Clerk to send a copy of this Order to counsel of record and any unrepresented party.